## LYON v. WASHBURN.

3   201
4   237
3   201
12   354
3   201
16   530

1. Where an appeal is taken to the probate court from a judgment of a justice of the peace, and the cause submitted in the latter court upon the merits, a want of jurisdiction in the justice of the peace cannot be averred in this court, if the cause is one over which the probate court could have exercised original jurisdiction.

2. The proper foundation must be laid for the introduction of secondary evidence of the contents of a lost instrument. But where the plaintiff by letter authorized one as her agent to collect rents, and the agent accepted an attornment, and afterward as an attorney, his authority as such not being questioned, instituted suit to recover the rents: *Held*, that the letter was immaterial in a suit for the rent; instituting the action was a ratification of the act of the agent, notwithstanding the same individual acted as both agent and attorney at law.

3. When the evidence shows that an attornment has been made and accepted in good faith, the tenant, in an action by the landlord against him for rent, will be estopped to assert title in his original lessor, or the demise under which he entered.

*Error to Probate Court of Clear Creek County.*

This was an action in assumpsit for rent. The cause was commenced by Levi H. Shepard, the agent and attorney of Emma Washburn, against Henry E. Lyon, before a justice of the peace. The plaintiff recovered a judgment from which the defendant appealed to the probate court of Clear Creek county. Upon a trial *de novo* in the latter court, without a jury, Shepard, on the part of the plaintiff, testified: "In September, 1873, I received a letter from Emma Washburn, which letter was lost, asking me to act as her agent and collect her rent in Georgetown."

The defendant objected to the witness stating the contents of the letter as to his agency, "without proof of the loss of the letter." The objection was overruled and the defendant excepted.

The witness Shepard testified further, as follows:

"I went down to see Mr. Lyon, who was then living in the house on lot 18, in block 75. I told him that the house was then owned by Mrs. Washburn, and that she had written to me to rent the house and collect the rent. He said that he wanted to still live in the house, and would pay me the rent, but could not do so before the first of January. I told him that that would do if he would pay it the 1st of January, 1874. I then told him that he might have the house at the same rent per month that he was then paying for it, and asked him how much he was paying. He said $10 per month, at least so I understood him to say, $10. After the 1st of January, 1874, I saw Lyon again and asked him if he could pay me some rent on that house. He said he could not because he was disappointed in getting money, but promised to in a short time. Some time in March I saw Mr. Lyon again and asked him for payment of rent. He again told me that he had been disappointed and could not pay me before the 1st of May. I saw Lyon and he said he could not pay before the 1st of July. After the 1st of July, I called on him and he said he would come to my office and settle with me that night.

He did not pay me at that time, and kept the house until the 13th of October, and then left and did not pay me any rent. Mr. Lyon was in the house in November, 1873, when I went to see him. I have charged rent since the 6th day of November, 1873, to the 13th day of October, 1874."

This witness also stated on cross-examination, that at the time he informed Lyon of his authority to collect rent for Emma Washburn, that he also "asked Lyon for rent due prior to that time, for Dr. Pollok."

The plaintiff produced in evidence a deed of quit-claim from Jennie Pollok and her husband, conveying the premises in controversy to the plaintiff; the deed bearing date November 6th, 1873, also a deed bearing date April 11th, 1874, to the plaintiff from James Gunn, president of the board of selectmen of Georgetown, as trustee under the acts of congress, and the laws of Colorado, for the relief of the citizens of towns upon the public lands. Also a trustee's deed from one Ed. C. Parmelee, to Jennie Pollok, reciting a trust deed from Bell Key to Parmelee, for the use of H. M. Arney, to secure the payment of $250; the breach of the conditions of the trust deed, and the forfeiture and sale thereunder of the premises in question to Jennie Pollok, on the 23d of August, 1873.

The defendant introduced evidence to prove that he had not promised to pay rent to Shepard as the latter had testified, and also that he "went into possession under Bell Key on the 25th of April, 1872, at a rental of $8 per month, but not for any specified time; that Bell Key owned the property when he took possession, and that he had known no one in paying rent except Bell Key"

The court gave judgment in favor of the plaintiff for $88 and costs. The defendant excepted and prosecutes this writ of error, assigning for error the ruling of the court below in permitting evidence of the contents of the letter testified of by the witness Shepard, for the reason assigned at the trial, also upon the admission of the several deeds in evidence; also that the court erred in rendering judgment in favor of the defendant in error, and that the judgment was manifestly against the evidence.

Messrs. TAYLOR & YATES, for plaintiff in error.

Mr. L. H. SHEPARD, for defendant in error.

WELLS, J. 1. Whether in any conceivable case the title to land may be so in dispute in an action to recover rents, or for the use and occupation of lands, as to exclude the jurisdiction of the justice of the peace, is not necessary to be now determined. At the close of the case made by the plaintiff in the court below, the defendant put in his testimony and submitted the whole matter to the determination of that court upon the merits without excepting to the jurisdiction in any form. The tacit stipulation which is to be implied from his conduct in this respect is equivalent in its effect to an express waiver of the objection, and inasmuch as the probate court might have entertained the controversy if the cause had been an original one, the jurisdiction cannot now be questioned. *Allen* v. *Belcher*, 3 Gilm. 594; *Bisher* v. *Richards*, 9 Ohio St. 498.

2. The objection which was taken to the testimony given by Mr. Shepard as to the contents of the letter of instructions, said to have been received by him from his client, seems to us to have been made in apt time, and the reasons assigned therefor sufficiently explicit to advise the court that more specific evidence of the loss of the writing was demanded. Such evidence the defendant was entitled to exact. To show in general terms that a writing is lost without showing search or inquiry for it, has never been regarded as sufficient to admit secondary evidence of its contents. The letter was not material, however, except for the purpose of showing the agency of Mr. Shepard to accept defendant's *attornment*. But the action is founded upon this transaction, and is an effectual ratification of the agency which Shepard then assumed. *First Parish in Sutton* v. *Cole*, 3 Pick. 245; *Hening* v. *Polly*, 8 Mass. 113; *Ham* v. *Boody*, 20 N. H. 414; *Bank of Augusta* v. *Conroy*, 28 Miss. 870.

The circumstance that the action appears to have been instituted by the same authority who assumed to act for the plaintiff in the matter of the *attornment* is not supposed to afford an exception to the general rule.

The authority of the attorney not having been questioned below is, for the purposes of the present inquiry, conclusively presumed. The ratification of the act of Mr. Shepard in accepting the *attornment* is as complete and effectual as if the action had been instituted by another attorney, or for that matter, by the plaintiff herself. The error in allowing secondary evidence of the contents of the letter seems, therefore, to be immaterial.

3. The general rule confessedly is that the tenant cannot deny his lord's title. Fraud, force, or mistake of fact, inducing an *attornment*, or the acceptance of a lease by one already in possession, is conceded to furnish an exception. It was once held, also, that where a mere *attornment* is shown to establish tenancy, the defendant may rebut this by showing that he received the premises from a third person for a term which is still unexpired. *Cornish v. Searell*, 8 B. & C. 471.

Recently it has been attempted to extend the exception to all cases where the tenant was in actual possession at the time of the attornment or acceptance of the lease. *Tewksbury v. Marzroff*, 33 Cal. 237 ; *Franklin v. Mereda*, 35 id. 566 ; *Fuller v. Sweet*, 30 Mich. 240.

In such case it is plausibly said, the one has received nothing, and the other has parted with nothing. There is no consideration for the attornment; and it has no more validity, or effect, than any other promise made without consideration. The argument omits from consideration the circumstance, that every letting, and every acceptance of an attornment, involves an implied, if not an express undertaking that the tenant shall peaceably enjoy the premises as against the landlord ; that is to say, that proceedings for the assertion of the hostile title shall not be instituted. This undertaking to forbear suit, whether express or im-

plied, is as effectual and sufficient a consideration, for the promise to pay rent, as an original delivery of the possession would be. It is no answer to say that the tenant may be liable to one landlord, by virtue of an original lease, and to another by virtue of a subsequent attornment ; even if the law be assumed by the argument, it is still no answer. To avoid the assertion of a hostile title, one may lawfully contract to pay for his own ; and if the threatened litigation be forborne, he is bound by his promise ; and so, the tenant holding under a lord, where title is unimpeachable, may, if he will, undertake to pay rent to every stranger who demands it. Such demand implies the threat of litigation and dispossession, if the demand be refused ; and if made in good faith, and without fraud, or other improper practice to induce concession, and if the tenant yield to it, with a full understanding of all the facts, which are material to the question of his liability, it is difficult to see why he should not be bound by his promise, even though he should become liable thereby to pay triple rent for the same premises.

If, in truth, the adverse claimant have the paramount right, and be entitled to immediate possession, an attornment to him, in good faith, to avoid the threatened eviction, is probably a bar to the action of the original lessor for rent. *Moore* v. *Goddard*, 13 Metc. 178 ; *Somers* v. *Salters*, 3 Den. 216 ; *Merryman* v. *Bourne*, 9 Wall. 592.

If the hostile title be not the superior one, it is the tenant's own folly to yield to an empty claim, but if he does so, and thus induces a forbearance of litigation, it may be until the statute of limitations has completed its course, no principle can be invoked which shall permit him to recede from what he has solemnly undertaken. The effect of the attornment upon the possession of the original landlord, if the tenant should yield the premises to him, it is not neces·sary to consider at this time.

The court below has found, in effect, that defendants attorned to the plaintiff ; and notwithstanding the contradic-

tions in testimony, sufficient appears to sustain this finding. The evidence was given to bring the case within the just exceptions to the general rule.

The defendant was, therefore, *estopped* to assert the title of the original lessor Key, or the demise under which he entered. The conveyances offered on the part of the plaintiff below were an ineffectual attempt to show the title, which, as we have seen, the defendant was precluded from denying. The error in admitting them was, therefore, immaterial.

Judgment is affirmed with costs.

*Affirmed.*