JACOB GODFREY *et al.*, plaintiffs in error, *vs.* ROBERT D. WALKER *et al.*, defendants in error.

1. If a paper has been diligently searched for and cannot be found, its contents may be shown by parol. (R.)
2. Though notice to quit was not served upon the proper agent of the tenant, yet if the tenant got the notice it is sufficient. (R.)
3. If the printed minutes of a Conference were read to a party by one who knew they were the minutes, it is competent to read said minutes in evidence to show what was read to the party. (R.)

Godfrey *et al. vs.* Walker *et al.*

4. In a proceeding by trustees to turn out tenants of their church, their chairman may make the affidavit. (R.)

5. It appears from the record, that on the 24th day of September, 1845, a deed was made to the land in dispute (upon which Andrew Chapel was afterwards erected) *to trustees for the use of the colored members* of the Methodist Episcopal Church, South, within the jurisdiction of the General Conference of such church, and that a large portion of the congregation using said house of worship, dissevered their connection with the Methodist Episcopal Church, South, and united with the African Methodist Episcopal Church, the trustees at the time permitting the occupancy of the church to such organization; and afterwards, in 1865, the parties presented their memorial to the Georgia Conference of the Methodist Episcopal Church, South, stating that they had associated themselves with the African Methodist Episcopal Church, and requesting that this property be ceded to them; and the Conference replied that the titles to the house of worship used by colored charges of their church were vested in trustees, and that they had no power to convey the property to any other organization whatever, but recommended that the colored people who were lately members "of our church" be permitted to use them to worship in. And such action was properly notified to the parties, and they continued in their use of the church; and that in September, 1868, a notice to quit was served, responded to in January, 1869, declining to give up the possession until compelled by law; and the chairman of the board of trustees · made affidavit under the 4005th section of the Revised Code, to which a counter-affidavit was filed under section 4007; and issue joined, and the Judge charged the jury, in effect, that except it appeared that the defendants were members of the Methodist Episcopal Church, South, that the plaintiffs were entitled to recover.

*Held,* Under the facts in this case, that the title to the property vested by the deed in the trustees for the use of the colored members of the Methodist Episcopal Church, South, and just as soon as the members severed this connection, which was perfected by their uniting with the African Methodist Church, that instant they surrendered all legal right as beneficiaries to the use or occupancy of the church, and all claim except at the will or sufferance of the legal owners.

6. *Held, again,* Under the facts in the case, that their occupancy after notice of the permission to occupy, constituted them tenants-by-suffrance, under the Code, to the legal owners. They were lawfully in possession before they ceased membership, and their remaining by permission of the lawful owners afterwards, was under the changed relation, established, by their severance from the membership of the church, and did not relate back to their original possession as members of the Methodist Episcopal Church, South. They were not trespassers, for they had permission; nor were they owners, for they had

Godfrey *et al. vs.* Walker *et al.*

no color of title. They were not tenants-at-will, for they were not in under contract, and their *status* was that of tenant-by-suffrance, and subject to be removed under the 4005th section Revised Code of this State.

Secondary Evidence. Notice to Quit. Documentary Evidence. Landlord and Tenant. Before Judge SCHLEY. Chatham Superior Court. August, 1870.

Certain members of the Methodist E. Church, South, who worshiped in Andrew Chapel, at Savannah, Georgia, joined the African Methodist Church, and claimed the church property. Being in possession, they refused to give it up to the members of the church, South, and the latter began proceedings to eject them. The notice to quit was served upon the preacher in charge of the congregation in possession, and the affidavit for a warrant was made by the chairman of the board of trustees. After the evidence was introduced, the Court charged the jury, substantially, as follows:

In this issue, you must look to the testimony and find whether the deed offered, and before you, is a deed to the Trustees of the "Methodist Episcopal Church, South," known as Andrew Chapel; if you find that the church and property in dispute is conveyed to them, then, *prima facie,* they are the rightful owners, and entitled to its possession, unless the defendants in this case should show, by proof "or title," that they are entitled to it. Now, the defendants say they are the *cestui que trusts,* under the deed, and entitled to its benefits, being the same congregation, and are the beneficiaries under the trusts. You must look to the testimony and see if the defendants have shown you, by proof, that they are the congregation; if so, they are rightfully entitled to continue, and if there is any proof that it is occupied by other congregations or persons, other than the members of the Methodist Episcopal Church, South, and there is satisfactory evidence that the defendants are tenants-at-will, and if the notice has

been given according to law, the plaintiffs are entitled to recover.

The jury found for the plaintiffs. The defendants moved for a new trial, upon the following grounds:

1st. Because the Court erred in admitting the testimony of C. D. Rogers, in regard to the notice to quit the premises, the same being in writing, and the original not accounted for, and that a service of the same on the preacher in charge was a sufficient service on the party in possession.

2d. Because the Court erred in admitting in evidence a printed copy of a portion of the Minutes of the Georgia Conference, held in 1866, the Assistant Secretary of the Conference stating it was a correct copy of the proceedings of the Conferences.

3d. Because the Court erred in holding that the chairman of the board of trustees was a competent party to make the affidavit for the possessory-warrant, under the statute.

4th. Because the Court erred in charging the jury as follows: "You must look and see if the defendants have made proof that the members are the members of the Methodist Episcopal Church, South."

5th. Because the Court erred in charging the jury as follows: "If you find the defendants have not made this proof the plaintiffs are entitled to recover."

6th. Because the Court erred in charging the jury that, "if the plaintiffs are the owners of the property, then the relation of landlord and tenant does exist."

7th. Because the Court erred in charging the jury that, "the trustees hold the legal title, and have it now."

8th. Because the Court erred in refusing to charge the jury that, "the legal estate continued in the trustees no longer than the execution of the trust required, and then vested in the persons, beneficially entitled, the legal title merging in the equitable interest."

9th. Because the Court erred in refusing to charge the

jury that, "occupation of premises for many years is a tenancy from year to year, and that, in a tenancy from year to year, the tenant is entitled to six months notice to quit, terminating with the year."

10th. Because the Court erred in suggesting to counsel for the plaintiffs, during the progress of the trial, and while a witness was being examined, and pending an argument by counsel on the question of admissibility of a certain part of his testimony, and before the argument was concluded, to withdraw the witness and put up another, in order to hasten the cause, and in permitting counsel to do so, against the protest of counsel for the defendants; the question as to the value of the repairs was afterwards withdrawn, counsel for plaintiffs stating he should not claim rent; the Court stated he permitted this to speed the cause, while the counsel was getting his authority.

11th. Because the jury found contrary to the evidence.

12th. Because the jury found contrary to the weight of evidence.

13th. Because the jury found contrary to the law.

The Court refused a new trial, and error is assigned on said grounds. For further facts, see the opinion.

A. W. STONE, for plaintiffs in error. This proceeding is under Revised Code, sections 4005, 4007. To sustain it plaintiff must be landlord and defendant tenant: Revised Code, sections 4005, 2253. Comyn's Dig., Landlord and T.: Revised Code, sections 2259, 2260, 4005. Defendants were not tenants-at-sufferance: 4 Kent's Com., 117; 1 Bouv. L. D., 480; 2d, 574. Estates upon condition: Revised Code, section 2268; 1 Bouv. L. D., 481; 4 Kent's Com., 123, 124. Trust executed and title no longer in trustees: Revised Code, sections 2287, 2288, because *cestui que trusts*, slaves when deed was made, are now free: 4 Kent's Com., 325, 310; 1 Barn & Cress, 336. Parol evidence of notice to quit improperly admitted: 1 Gr. Ev., section 84; Revised Code,

section 3714.   Defendants not tenants-at-will:   4 Kent's Com., 111; 1 Bouv. L. D., 480; 2d, 574; 12 Ga. R., 400; Revised Code, sections 2264, 2265.   If tenants, they were from year to year:   2 Bl. Com., 140; 2 Bouv. L. D., 573, 574; 3 Burr, 1609; 4 Kent's Com., 112.   But they were not tenants from year to year:   Revised Code, section 2253. Conditions reserved only for grantor and his heirs:   20 Ga. R., 563.

A. B. SMITH, HARTRIDGE & CHISOLM, for defendants in error.

LOCHRANE, C. J.

It appears from the record in this case that on the 24th September, 1845, the trustees of the Methodist Episcopal Church, of Savannah, made a deed to the trustees of the Methodist Episcopal Church, South, to a certain lot of land for the consideration of ...... hundred dollars in trust, upon certain conditions and for certain uses therein specified ; that such trustees were to erect and build upon the land conveyed a house of worship for the use of the colored members of the Methodist Episcopal Church, South, according to the rules and discipline which, from time to time, may have been adopted by the preachers and ministers of said church, at their General Conferences.   The deed further provides for the appointment of trustees to fill vacancies arising from any cause; and, by virtue of this conveyance, such trustees went into possession and erected a house of worship for the purposes expressed, and called it Andrew Chapel.   In the quiet administration of its spiritual affairs, it remained undisturbed and within the protection of the General Conferences of the Methodist Episcopal Church, South, until the capture of the city of Savannah by the Federal forces.   In the convulsion of public sentiment consequent upon the fall of the city, several of the members of Andrew Chapel joined the African Methodist Episcopal Church, and, in this condition, the Trus-

tees of the Methodist Episcopal Church, South, permitted the occupancy of the church by them for the purposes of public worship, which was continued by the members of the new organization or African Methodist Episcopal Church. It also appears that Mr. Walker offered, in writing, to let them have this use, to which no reply was made, and in December, 1865, a memorial was addressed by the parties *plaintiffs in error* to the Georgia Conference, stating that they had associated themselves with the African Methodist Episcopal Church, and requesting that Andrew Chapel might be ceded to them. To this, as well as several similar applications, the reply of the Conference, by its minutes, is found in the resolution, "that the titles of the houses of worship used by colored charges are vested in the trustees for the use of colored members of the Methodist Episcopal Church, South, so that the Georgia Conference has no power to convey the property to any other organization whatever ; " and concludes by recommending that the colored people who were lately members of *our* churches be permitted to use them temporarily for worship.

It also appears that in September, 1868, a notice to quit was served upon the parties, and responded to in January, 1869, declining to give up the possession until compelled by law.

In this condition of affairs, upon the 10th February, 1869, the Chairman of the Board of Trustees of Andrew Chapel made his affidavit, under the 4005th section of the Revised Code, praying process to dispossess the parties, in terms of the law, to which a counter-affidavit, under section 4007, was made, setting up that they did not hold the property in dispute by lease or rent, or at will, or by sufferance from the persons named, to-wit: The Trustees of the Methodist Episcopal Church, South.

Upon the issue joined on these proceedings, the case came on for a hearing, and the plaintiffs introduced the deed referred to in evidence, and the proof from which the recital

Godfrey *et al. vs.* Walker *et al.*

of facts have been stated; and the jury found the plaintiffs were entitled to the possession of the premises in dispute, upon which a judgment was entered. A new trial was moved upon thirteen grounds, which was overruled by the Court and excepted to, and now comes before this Court by writ of error.

The importance of this case may properly invoke, at our hands, a more than summary disposal of the questions involved, inasmuch as it involves the legal rights of occupancy to premises consecrated to the services and ordinances of religion, and the relative relations of those who, while clothed with the civil rights of trustees, also appear in such character, with the investiture of more than mere civil duty, as representatives of those who claim to be the rightful *cestui que trusts*, as colored members of the Methodist Episcopal Church, South, to their house of worship.

1. The first ground of error alleged, is the admission of the testimony of Mr. Rogers. This objection arises upon two grounds: First, in permitting him to prove the notice by parol, and not producing the original in writing; and, second, that its service on the pastor in charge was insufficient. We do not think that the Court erred in either of these particulars. Mr. Rogers stated that he was secretary of the board of trustees, and that he had received the communication from the chairman, and sent a copy to the church, and served notice to quit on the pastor in charge; he had hunted for the original and could not find it. Why, was this not sufficient to have let in the evidence? Under the rulings of this Court, at the present term, we have held this to be sufficient; and, further, under section 3714 of the Code, the fact of the primary evidence not being accessible to the diligence of the party, is made to the Court, who will hear the party himself and adjudge the question; and this Court will not interfere with his judgment, except the discretion is abused. In this case, the oath of the witness, that "he had hunted for the original paper and, after diligent search, failed to find

it," was all that could be required; it was not accessible to the diligence of the party and the secondary evidence was properly admitted.

2. Was the service upon the preacher in charge a sufficient notice? In this case, the church was occupied by a congregation, not in the light of individuals, but as an organization. The pastor, without going into any learned disquisitions of the duties of his office, stands, encircled by history, with special honors and privileges, associated with his sacerdotal duties. But, from the beginning, down to the last tragedy of Jewish history, we find little to enlighten a judicial opinion. In this country, church property vests, generally, in trustees, and not in the pastor. This is true, particularly of the Methodist churches, whose pastors are scattered and remain in only temporary positions; and, where there are trustees of churches, we deem them the proper parties to bring suit, or to defend them, or to serve with process or papers. In this case, the evidence is, that notice was given to both, and the answer of Godfrey is the admission of receiving such notice, being evidence that it had been known. And if it appears as a fact, in the case that they had the notice, we deem this sufficient.

3. The next ground of error is, that the Court erred in admitting a printed copy of the Minutes of the Georgia Conference held in 1866. The evidence was received upon the statement, under oath, of the Assistant Secretary of the Conference, who says the communication came under his personal supervision; that these are the minutes, etc., and that, as presiding elder, he went down and read them to the colored people. We are of opinion that the testimony of the secretary was sufficient to have let the proceedings on the minutes in evidence, for it was the very strongest testimony which could have been offered. The personal information of the secretary was stated, and that the communication was not preserved. In matters which appear, by properly organized bodies of men, upon their minutes, the evidence of the sec-

retary that they are the minutes is sufficient legal testimony to authorize their admission, in cases where such proceedings are required as evidence.

4. The third error assigned is, that the Court erred in holding the chairman of the board of trustees was the competent party to make the affidavit. The section 4005th of the Code says the affidavit may be made by the owner, his agent or attorney in fact or attorney at law. We do not deem it necessary to enlarge upon this question, as the statute is comprehensive, and the chairman of the board of trustees was competent to make the affidavit.

5. The fourth ground is, that the Court erred in charging the jury, "you must look and see if the defendant has made proof that the members are the members of the Methodist Episcopal Church, South."

The fifth ground is, his charge, "If you find the defendants have not made this proof, the plaintiff is entitled to recover." Both these assignments of error resolve themselves into the discussion of the legal question controlling this case, so far as the merits of recovery are concerned; and the judgment of this Court upon them will dispose of the seventh and eighth grounds taken in the motion for a new trial.

Was the charge of the Court error in placing the rights of defendants to the property upon the proof they were members of the Methodist Episcopal Church, South? For the whole question of right hangs on this point. The argument of counsel for plaintiff in error is, "that this deed was made to the trustees for the use of the colored members of the Methodist Episcopal Church, South; that, at the time the deed was made, they were incapable of holding property; that that incapacity being now removed, as they were originally the beneficiaries and had the equitable interest, as the reason of the trust is at end, the trust is extinguished, and the legal title goes over to them."

The application of such principles does not come within

the reach of this case. This deed must be construed in the light of the law, and as it was made in trust for the use of the members of the Methodist Episcopal Church, South, just as soon as the members dissevered this connection, which was perfected by their uniting with another organization, that instant they surrendered all claim to the use or occupancy of the church, except at the will or sufferance of the legal owners.

It has been argued that they are still members of the Methodist Episcopal Church, and the prefix of "African" to the name does not change their *status;* that the purpose of the trust was to provide a house of worship wherein to "expound God's holy word;" and that they have not refused to permit preachers of the Methodist Episcopal Church, South, to occupy the pulpit; and this is brought to bear in construing the condition of the deed.

We do not propose to discuss the differences of these church organizations outside what appears upon the record.

The record shows that they had associated themselves with the African Methodist Episcopal Church, and asked that Andrew Chapel be ceded to them. Here is a distinct admission of their having gone into another church organization. The fact is presented by themselves; and the response of the Conference recognizes this fact. "This property," says the Conference, "is vested in trustees for the use of colored members of the Methodist Episcopal Church, South, and we have no right to convey it to any other organization whatever," and concludes by saying, "that the colored people, who were lately members of *our* church," etc. Here is the admission of the one and the recognition of the other, that these two parties are not in the *church*, or members of the Methodist Episcopal Church, South.

If they are not, in what did the Court err in charging the jury? If they are not, the plaintiffs had the right to recover. The title to this property was in the plaintiffs. The deed was in evidence, and the defendants did not shew any

title to themselves. And except they were members of the Methodist Episcopal Church, South, they were not *cestui que trusts* under the deed, and had no legal right to the house of worship, no more than a congregation of colored Baptists.

The fact that they were original members gave them no legal rights except they remained members. The fact that they were colored had nothing to do with the question. The trustees of a white congregation, under the same facts, would recover. The whole question is as to the church organization entitled to the church property, and the answer is, from all law and authority, that it is the one that holds the title. The question is too plain to multiply words. When the members of the Methodist Episcopal Church, South, carried their membership elsewhere, they could not carry the house of worship, dedicated to the use of others as beneficiaries, with them; and, consequently, we think the Court charged the jury correctly upon this legal question.

6. We now come to the only question of embarrassment in this case, and that may be found in the sixth ground of error, and arises upon the charge of the Court, applied to the facts of the case, whether the relation of landlord and tenant existed, so as to authorize the proceeding instituted for the recovery of the possession. The Code, section 4005, applies " in all cases when lands or tenements shall be held and occupied by any tenant-at-will or sufferance, whether under contract of rent or not." Is this case within the provisions of that section? There is no pretence set-up that the parties are under contract for rent or by express agreement for any definite time, or by contract at all. So that the question is narrowed down to one single view. Are they tenants-at-sufferance? Our statute is broad, and the remedy it lays down summary. These defendants have not assented to anything by words, they have seemingly reserved the question of determination for the Courts. But we must take this whole case, with the acts of the parties, to determine the legal effect of their occupancy. It is beyond doubt that they

have no legal right to the possession, and that they are in possession without warrant of law.

Let us see, briefly, how they are in possession. In 1864 or 1865, they were members of the Methodist Episcopal Church, South, and were lawfully in possession. Their original possession was purely a legal one. Now, as soon as they ceased to be members of this organization, their right of possession ceased. They were out of the church, and out of the rights of the membership of the church, by their own act. And upon what terms did they remain in? It was not by legal right; nor was it by contract. Was it by sufferance of the legal owners? A party may be a tenant without being under a contract for rent. At the common law, a tenant-at-sufferance is one who comes into possession by a lawful demise and, after his term is ended, continues wrongfully and holds over. Now, by the principles of this definition, we are satisfied that the defendants below were members of the Methodist Episcopal Church, South, lawfully enjoying the possession of this church. It was not the subject matter of rent, but when they became members of the African Methodist Episcopal Church, their relation changed, and by notice to them they went into the occupancy at sufferance of the rightful owners. They were not trespassers, for they had permission; nor were they owners for they had no shadow of title. They were not tenants-at-will, for they were not in under contract. We think they were tenants-at-sufferance, liable to be turned out without notice, when the lawful owners demanded possession. And when they refused, this section of the Code was properly invoked to remove them from the possession.

Judgment affirmed.