125  393
125  840
126  398

125  393
f127  390

## BULLARD *v.* HUDSON *et al.*, executors.

1. Where A, being in possession of lands, agrees to pay rent to B for such lands, thereby attorning to B as his landlord, he will be estopped from setting up title in himself adverse to B, until he shall have surrendered possession, even after the expiration of the period during which he had contracted to pay rent.
2. Where the evidence relied upon by B to show the relation of landlord and tenant, in proceedings to remove A from such lands, consisted in part of a promissory note in which terms descriptive of said lands were used, it was competent for A to show by parol that the descriptive terms were not in the note at the time of its execution.
3. Where the evidence was conflicting upon one of the controlling issues of the case, the court erred in directing a verdict.

Submitted February 22, — Decided May 16, 1906.

Eviction. Before Judge Lewis. Putnam superior court. March 21, 1905.

*S. T. Wingfield,* by *Z. D. Harrison,* for plaintiff in error.

*Turner & Adams,* contra.

BECK, J. The executors of M. R. Hudson sought to dispossess Bullard of certain land, alleging that he was a tenant holding over. Bullard filed his counter-affidavit averring that he held the land in his own right. Upon the trial of the case the plaintiffs introduced the following note:

"1000 lbs. By the 15th day of October next I promise to pay John R. Hudson, I. S. Hudson, and Sarah T. Hudson, as executors of M. R. Hudson, deceased, 1000 lbs. of middling lint-cotton packed and delivered in Eatonton, Ga., for rent for year 1902 of that certain parcel of land lying in Putnam county, Ga., on which I now reside, being a two-horse farm being the land I worked in 1901, and adjoining lands of Cinth Athon; B. E. Gooch, Mose Bussy, and others. As against this debt I waive and renounce all rights of homestead and exemption of personalty allowed me under the laws of this State. This February 19th, 1902.

Witness: I. H. Adams, Jr., Ordinary. J. M. Bullard (seal)."

Plaintiffs also introduced evidence tending to prove that the land described in the note was, at the time the defendant entered upon it, the property of their testator's father, John R. Hudson deceased, and one Mrs. Moseley, as tenants in common; that John R. Hudson, Jr., one of the executors above mentioned, assumed charge of the place upon the death of his father, M. R. Hudson, and sent his

overseer with a note, similar to the one set forth above, to Bullard for his signature; and that Bullard, after erasing the words, "two-horse farm," and inserting in lieu thereof, "one-horse farm," signed the note. The insertion and erasure were not satisfactory to Hudson, and he finally secured Bullard's signature to the note first above mentioned. Bullard testified, that he did not understand that the description in the note referred to the place on which he lived; that his son Tom had, for some time previous to this transaction, leased from John R. Hudson Sr., the grandfather of the executors of M. R. Hudson, a tract of land lying next to his, Bullard's, own farm; that his son died in 1901, and he offered to assume his son's "contract for this tract of land [which was called the Tom Bullard tract] for said year 1901 simply to accommodate the said John R. Hudson, deceased." Bullard further testified: "In the fall of 1901, M. R. Hudson, who was attending to his father's business, requested me to rent said Tom Bullard tract for 1902, also saying he could not dispose of it, and to accommodate him I agreed to rent it, but gave him no rent note for it; and while I gave a rent note to the present plaintiff, John R., for this said tract, the contract or agreement to rent the said Tom Bullard farm for said year 1902 had been previously made between said M. R. Hudson, plaintiff's father, and myself. M. R. Hudson died on the first day of January, 1902, and soon thereafter the present John R. Hudson sent me, through his overseer and agent, W. A. Gorley, a rent note to sign for said tract of land for said year 1902. After looking over said note I found said tract of land was described as a two-horse farm, whereas I knew it to be only a one-horse farm; both said Gorley and myself agreed that it was a one-horse farm, and I struck out the word 'two,' and inserted in lieu thereof the word 'one,' making it read 'a one-horse farm,' and signed said note in this shape and delivered it to said Gorley. In Eatonton, a few days after this, I met plaintiff, the said John R. Hudson, and he told me that said land was a two-horse farm and not a one-horse farm, and insisted that I sign a note with these words in it as written in the first note; he knew all about the Tom Bullard farm or tract of land, and the difference between us was as to whether said tract of land was a one-horse or a two-horse farm, I contending it to be the former, while he held it to be the latter. I finally consented to sign the note as he requested, describing said tract as a two-horse farm, but required him

to insert therein the words, 'being the same land I worked in 1901.' When I signed these two rent notes, the words, 'being land on which I now reside adjoining lands of Cinth Athon, B. E. Gooch, Mose Bussy, and others,' were not in either. I did not see or notice such words and description. This description covers my own home and my own lands which I have occupied, used, and improved for over thirty years without ever paying rent to any one. This Tom Bullard tract lies adjacent to my own land, and is separated from my land by a line run off and agreed upon between M. R. Hudson and myself before these rent notes were ever given. The Tom Bullard tract belongs to John R. Hudson, deceased. My land consists of one hundred acres. The land and the only land I rented in 1901 and 1902 was the Tom Bullard tract. I am a practical farmer, and know for what lands rent; a one-horse farm rents for 1000 pounds of cotton."

Gorley, the overseer, testified, that Bullard refused to sign the note he carried to him, "because said note, he claimed, called the land a two-horse farm; he said the Tom Bullard tract' was only a one-horse farm, and for this reason struck out the words, as I have stated. Before his death M. R. Hudson showed me the line between the Hudson lands and the lands occupied by said Bullard; the Tom Bullard tract lies on the east side of this line on Little river." Defendant sought to prove by Gorley that the land discussed by defendant in the conversation with witness, at the time of the controversy about the "one" or "two" horse farm, was the Tom Bullard tract, and also that the land rented by Bullard in 1901 was the Tom Bullard tract; but the court would not allow the evidence, on the ground "that it would alter and vary the contract, and that the note itself was the highest and best evidence as to what land was rented." Defendant then offered to show by parol testimony that the consideration expressed in the rent note was not the true consideration thereof, and that he never intended to rent the lands described in the note, "but that the true and only consideration thereof was said Tom Bullard tract." The court refused to admit this testimony. Defendant also sought to explain the words, "being the land I worked in 1901," insisting that they were ambiguous; but the court would not permit it. At the conclusion of the evidence, counsel for plaintiffs moved the court to direct a verdict in their favor, while defendant's counsel asked that a non-

suit be awarded. The court directed a verdict in favor of the plaintiffs; and the defendant excepted, assigning error upon the court's refusal to grant the nonsuit, and upon the refusal to admit the testimony above referred to.

1. The defendant sought to arrest the proceedings in this case against himself and to prevent the removal of himself and his goods from the land in controversy by declaring on oath, under the provisions of·the Civil Code, §4815, that he held the land in his own right and as his own, and that he did not hold it "under any contract of lease, rent, or otherwise" from the plaintiffs, and that he was not "the [plaintiffs'] tenant as alleged, either at will or by sufferance," that he had "never rented the land and premises described by the [plaintiffs] in [their] affidavit and warrant, either from the said [plaintiffs] or from any one else." Of course, if there was evidence to support this contention of the defendant, the court erred in directing a verdict for the plaintiffs; and we have to consider whether or not, under all of the testimony in the case, there is to be found sufficient evidence to have authorized a finding contrary to the verdict directed. The ruling of the court was evidently based upon the theory that the note introduced in evidence, by .its plain and unambiguous terms, established the fact that for the year 1902 the defendant had attorned to the plaintiffs and recognized the relation of landlord and tenant between them as to the land in controversy. And inasmuch as the note referred to was given for rent for the year 1902, and, by its terms descriptive of the premises rented, clearly covered the land in controversy, and no other, so.long as the note was unimpeached and unimpaired in its probative vigor and force, it was conclusive of the question at issue against the defendant, and in that state showed clearly that the defendant had attorned to the plaintiff and acknowledged him to be his landlord. That being true, the defendant was estopped to .question the title of his landlord; and this estoppel was still operative, notwithstanding the expiration of the period of time for which this note shows he had contracted to pay rent. "If a tenant in possession desires to litigate with his landlord the title to the premises, he must first pay the rent and·surrender possession. By entering under the landlord he admits his title, and the·law will not permit him to assume an inconsistent position, either by attorning to any one else as his landlord, or by claiming himself title to

the premises. It is wholly immaterial that the landlord may in fact have not even color of title to the property. It is enough that he claimed it, and that the tenant by his contract of tenancy recognized the claim. As against him, the claim is valid, though wholly unfounded. See *Grizzard* v. *Roberts*, 110 *Ga.* 41, where the previous decisions of this court are collated. See also 18 A. & E. Enc. L. (2d ed.) 411-414; 2 McAdam, Land. & T. (3d ed.) 1350, and cases cited, and §423. The rule is the same where the tenant is in possession, even under a claim of ownership, when the contract of tenancy is made. See Lucas *v.* Brooks, 18 Wall. 436; 18 A. & E. Enc. L. (2d ed.) 415, and cases cited in note 3." *Johnson* v. *Thrower*, 117 *Ga.* 1009. This doctrine has been so often stated by this court that no elaboration of it, or further citation of authority, is necessary. And no principle in conflict with it is stated in the recent case of *Hodges* v. *Waters*, 124 *Ga.* 229. In that case R. B. Waters had sued out a distress warrant against Hodges, claiming a certain sum as rent for the premises described. Hodges had obtained possession of the land from Mrs. Sarah Waters, and had entered upon the lands as her tenant. Some time during the continuation of that tenancy he agreed to pay R. B. Waters rent for the years 1896 and 1897, thus attorning to him for those years. The sum claimed in the distress warrant was for a period subsequent to those years. On the trial of the case the court charged the jury as follows: "If you find that C. W. Hodges ever at any time recognized or acknowledged R. B. Waters as his landlord, he can not now attorn to any other person, if his possession was continuous from that time; that is to say, he can not be heard to deny his obligation to pay rent to said R. B. Waters;" which charge was held by this court to be error for the reason that as the tenant was in possession under a third party at the time he contracted to pay rent to the plaintiff, when the time for which he had expressly agreed to pay rent to the plaintiff had expired, he was not then estopped from denying the relation of landlord and tenant between himself and the plaintiff, even though he had not surrendered possession of the premises in dispute, the court saying, that "after the expiration of the term fixed in the agreement, his obligation to pay rent depending upon the agreement alone, and his possession not having been obtained through the person to whom the promise was made, there would be no obligation upon him to attempt a vain and

idle thing, that is, to surrender the premises belonging to one person to another who was not entitled to it. He was not compelled at the end of the year 1897 to abandon possession of the premises which he at all times held under Mrs. Waters, in order to prevent a liability on his part to pay to her son rent in the future. Not having acquired possession from her son, the estoppel raised by the contract to pay rent was no broader in its operation than the contract provided for; and he was therefore not estopped from denying after 1897 that he was no longer liable to pay rent as a tenant to the son of Mrs. Waters. If, at the time the defendant had made the contract to pay rent to the plaintiff, the plaintiff had been in possession claiming title to the property as his own, and no other person's rights were to be affected, then his entering into a contract to pay rent would have made the defendant a tenant of the person to whom the rent was payable, and render him liable to all the incidents of such a tenancy. See *Johnson* v. *Thrower,* 117 *Ga.* 1007; *Willis* v. *Harrell,* 118 *Ga.* 906." But in the case at bar the defendant did not enter into possession by permission, or as the tenant, of a third party. According to his own statement, at the time of signing the note for rent he was in possession of the place described, under claim of ownership, and, under the ruling in the case first quoted from, having attorned to the plaintiff, he can not dispute his title without first surrendering possession of the premises.

2, 3. But if the words descriptive of and identifying the tract of land, for the rent of which the note set forth was given, were removed from it, then it were a question clearly open to litigation, and to be settled by evidence, as to whether the defendant had ever attorned to the plaintiff, or recognized him as his landlord for the land from which it is sought in this action to remove him. The defendant had clearly made the issue that the descriptive terms were not rightfully in the note, should not be there, and were not there at the time he affixed his signature to the document. Such was his contention. Was there any evidence to support it? The defendant himself testified, "When I signed these two rent notes, the words, 'being land on which I now reside, adjoining lands of Cinth Athon, B. E. Gooch, Mose Bussey, and others,' were not in either. I did not see or notice such words and description. This description covers my own home and my own lands which I have occupied, used, and improved for over thirty years without paying rent to any one;"

and insists that the note was given for the rent of a tract of land entirely distinct and separate from the lands in controversy. Clearly, if the defendant had testified positively and unqualifiedly that the descriptive terms above quoted were not in the note, then, under his testimony and the other evidence in the case, the question as to whether or not he had ever attorned to the plaintiff for the land involved in this proceeding should have gone to the jury; because if that description had been fraudulently inserted in the note after his signature had been placed thereon, it then became a question resting in parol as to what lands he was agreeing to pay rent upon when he signed the note. Now, did the subjoining of the declaration that he "did not see or notice such words and description," so entirely weaken, emasculate, and destroy the force of the former unqualified statement that the words and description in controversy were not in the note when he signed it, that the court could say there was no evidence which would authorize the jury to find in favor of the defendant's contention as to the contents of the paper as actually signed by him? We think not. The witness had testified as if having absolute knowledge of the non-existence in the writing of certain words. His additional statement that he did not see such words is not contradictory of the positive statement. Whether or not it was even a qualification of the positive statement is a question for determination by the jury. Certainly, taking the entire statement together, it could not be said that there was not at least negative testimony of the absence from the writing of the vital and important description in question. And what weight should be given to that testimony is a question entirely for the jury. To hold that the court was correct in directing the verdict would make it necessary for us to rule that the testimony under discussion had no weight whatever; and this we are not prepared to do.

*Judgment reversed.   All the Justices concur.*