## TALLEY *v.* MITCHELL *et al.*

1. Where, under a contract for the rental of certain premises for a term of three years, the landlord was not required to rebuild in case of destruction of or damage to the building upon the property by reason of fire, but there was a stipulation, that, "should the premises be destroyed or damaged by fire so as to be untenantable, the conditions of this lease shall cease from the date of the fire until the premises shall be restored to as good condition as they were in previous to the fire;" and where during the term a fire occurred causing a large portion of the premises to be untenantable, but the tenant refused either to deliver possession or pay rent, ,though continuing to use a portion of the property, under a statutory proceeding to dispossess him, to which he interposed a counter-affidavit, he was liable for double rent.

2. Under such facts the tenant was liable for double the contractual rate of rental, and could not reduce such amount by showing that after the fire the value of the premises for rent was much less than before.

3. None of the rulings in regard to rejecting evidence require a new trial.

4. Under the proceeding authorized by the Civil Code, §§ 5385 et seq., double rent can not be recovered from a tenant prior to demand for possession; nor is such action an appropriate one for the recovery of rent due under the contract prior to such demand.

(*a*) It not clearly appearing how long before the commencement of the proceeding demand for possession was made, it is directed that if, within twenty days from the filing of the remittitur in the office of the clerk of the superior court, the plaintiffs will write off from verdict and judgment $400, to cover the double rent included therein prior to the beginning of the action, the judgment will stand affirmed; otherwise it will be reversed.

JULY 11, 1912.

Eviction. Before Judge Bell. Fulton superior court. May 27, 1911.

*R. B. Blackburn* and *L. Z. Rosser,* for plaintiff in error.

*C. W. Smith* and *M. A. Hale,* contra.

LUMPKIN, J. John J. Woodside, as agent for Mrs. E. J. Mitchell and Mrs. G. M. Bridges, made affidavit and obtained a warrant for the eviction of W. M. Talley from certain premises. The affidavit alleged, "that said tenant fails to pay the rent now due on said house and premises; and that the said tenant is holding said house and premises over and beyond the term for which the same were rented to him;" also that demand had been made upon him for delivery of possession, which had been refused. The defendant filed a counter-affidavit in which he denied that the rent claimed to be due was so, and also denied that he was holding over and beyond his term. He further pleaded, that, under the terms of the con-

tract of rental, it was agreed that if the premises should be destroyed or damaged by fire so as to be untenantable, the conditions of the lease should cease until the premises should be restored to as good condition as they were in previous to the fire; that a fire occurred "destroying the front end of said building, in such a way as to make a large portion of said premises untenantable;" that he immediately gave notice to the renting agent and requested that the premises be restored to a tenantable condition; that the plaintiffs "have refused and still refuse to restore the premises partially destroyed by fire to the condition in which they were prior to said fire;" and that they are not entitled to recover against him. He also denied that any demand was made upon him for possession, or that any rent was due to the plaintiffs at the time of the commencement of the proceeding.

The contract of rental contained the following among other clauses: The tenant "further agrees that he will deliver the premises at the expiration of this lease in as good order and repair as when first received (natural wear and tear excepted). Said John J. Woodside, agent, agrees that should the premises be destroyed or damaged by fire so as to be untenantable, the conditions of this lease shall cease from the date of the fire, until the premises shall be restored to as good condition as they were in previous to the fire. . . It is further agreed by both parties to this contract that the said second party shall take the above-described premises in their present condition, knowing the premises are in bad repair and agreeing to make such repairs and improvements as are necessary at his own, the said second party's expense, and further to require no repairs or improvements from said owner or agent."

The jury found for the plaintiffs $2,500. The defendant moved for a new trial, which was refused, and he excepted.

1. The contract of rental involved in the present case has been before this court on a former occasion. It was then held that the contract imposed on the lessor no obligation to effect a restoration of the premises after the building was destroyed or damaged by fire. *Woodside* v. *Talley,* 135 *Ga.* 337 (69 S. E.. 492). The tenant, therefore, had no right to contend that he was relieved from the payment of the rental provided in the contract on the ground that the lessor was guilty of a breach of duty in not restoring the premises to their previous condition. If the landlord was not re-

quired to repair or rebuild, either there was no duty to do so, or it rested on the tenant. If there was a duty on his part to make such restoration, he could take no advantage of his failure to do so. If there was no duty of restoration, but a mere privilege, did the occurrence of the fire and the damage resulting therefrom operate, by virtue of the terms of the contract, to relieve the tenant, either permanently or until a restoration could be made, from the payment of rent, he retaining possession and using the premises? In *Snook & Austin Furniture Co.* v. *Steiner & Emery,* 117 *Ga.* 363 (43 S. E. 775), the lease contract provided, that, "should the leased premises be destroyed by fire," the lessors "are to rebuild the same with all reasonable dispatch, at their option, and that from the time of such fire until the rebuilding has been completed the rent shall abate for such time." It was held, that if, after the buildings were totally destroyed by fire, the lessors promptly notified the lessee that they elected to rebuild, and thereupon proceeded with all ordinary diligence to erect a structure substantially like that destroyed, the relation of lessor and lessee was suspended until the new building was ready for occupancy, when the rights and obligations of both under the lease were renewed; but that it was optional with the lessors whether they would rebuild; and that if they notified the lessee that they elected not to rebuild, or that they would rebuild a different kind of structure, the tenant was relieved from the obligation to pay rent, and was no longer entitled to possession of the vacant premises. In the opinion the following was quoted approvingly from Buschman *v.* Wilson, 29 Md. 553: "The clause with reference to the cessation of rent implies an obligation on the part of the tenants to surrender the premises upon the occurrence of the event that released them from the further payment of rent. Any other construction would work gross injustice, and contravene the plain purpose and design of the parties." It was also added: "Complete surrender of the premises is a condition precedent to the tenant's release from liability for rent under statutes containing provisions substantially similar to the contract here." 24 Cyc. 1160.

In the case now under consideration the contract provided, that, should the premises be destroyed or damaged by fire so as to be untenantable, "the conditions of this lease shall cease from the date of the fire until the premises shall be restored to as good condition

as they were in previous to the fire." It will be noticed that this provided not merely for an abatement of the rent but for a cessation of "the conditions" of the lease. This included the right of use by the tenant as well as any of the other stipulations. But if this provision of the contract should be treated as identical with that in the case of *Snook & Austin,* supra, the tenant does not set up in his affidavit or show by evidence that the premises were untenantable. In his counter-affidavit he says that "a large portion of said premises," was untenantable after the fire, and, in another place, that the landlord refused to restore the premises "partially destroyed by fire." The evidence shows that he continued to occupy the premises after the fire until just before the trial of the case. His position apparently was that the premises, though damaged, were sufficiently tenantable to occupy, but not to require him to pay rent. If he had a right to terminate the tenancy, he should have done so, and not have claimed the benefits of occupancy for himself, while refusing the corresponding payment of rent to the landlord. Having continued to occupy and use the premises, he continued to be liable for the rent.

2. It was contended that if the defendant was wrongfully holding over, he was a tenant at sufferance, and was liable only for double what the rent of the premises was shown to be worth, and not for double the contract rental. The affidavit made for the purpose of evicting the tenant alleged that he failed to pay the rent due, and was also holding over beyond his term. The written contract showed that the term had not expired by lapse of time. From what has been said above, it will appear that the defendant was not in a position to contend that the obligation to pay rent had terminated by reason of the fire. The Civil Code, § 5389, declares, that, if the issue provided for in preceding sections should be found against the tenant, "judgment shall go against him for double the rent reserved or stipulated to be paid, or, if he be a tenant at will or sufferance, then for double what the rent of the premises is shown to be worth," and that a writ of possession shall issue. Under section 5385, a demand for possession and refusal or omission to deliver it is necessary before commencing such proceedings. There can be no eviction of the tenant until it is wrong for him to continue to hold adversely to the landlord. If it should be held that, whenever he ought to deliver on demand and fails to

do so, he becomes a tenant at sufferance, and is liable only for double what may be proved to be the rental value of the property, then the portion of the section in regard to recovering double the rent "reserved or stipulated to be paid," would have no room for application. It is evident that the statute contemplated cases in which it should become wrongful for the tenant to continue to hold possession against his landlord's demand, and in which he might be ousted, and at the same time double the stipulated rent might be recovered. This is just-such a case as the statute contemplates. The time to which the tenancy was to continue, subject to the terms and stipulations of the contract, was April 30, 1911. The fire occurred in April, 1909. The tenant then ceased to pay rent. The proceeding to dispossess him was commenced in July of that year. The presiding judge submitted to the jury the question of whether there had been a demand for possession, and they found that there was. We thus have a case, not of a tenant holding over after the expiration of the time mentioned in the contract of rental, but of a tenant refusing to pay rent or deliver the premises, without sufficient legal ground therefor. The rate named in the contract was fifty dollars per month. The defendant contended that after the fire the premises were not worth above ten dollars per month. The court ruled that if the plaintiffs were entitled to recover they could recover double rent at the contractual rate, and rejected evidence to show the reduced rental value after the fire. In this he ruled correctly. See *Purtell* v. *Farris*, 137 *Ga.* 318 (73 S. E. 634).

3. Several rulings in regard to the rejection of evidence were assigned as error. The foregoing discussion covers the merits of the case, so far as the rights of the plaintiff to recover are concerned. None of the rulings mentioned furnish any ground for a new trial. Certain letters from the agent of the plaintiffs to the attorney of the defendant were rejected. In one of them he expressed the opinion that the result of the fire was to cancel the lease, and stated that "we" would entertain a wish on the part of the tenant to make a new lease on the rear end of the lot. In another he stated that he had been informed that the tenant was preparing to build an office on the front end of the lot, and that "we" are unwilling that this should be done until a satisfactory arrangement has been made. One of these letters was dated April 20, and the other April 28, 1909, after the tenant had given a check for

the payment of the rent for April, due on the first day of that month, and had later stopped its payment. Under the pleadings and evidence, the rejection of such letters does not require a reversal.

4. The remedy provided by the statute for the summary eviction of a tenant is primarily one for the recovery of possession, and not a suit to recover ordinary rent due prior to the demand by the landlord for possession. The statutory provision authorizing the recovery of double rent imposes this liability upon the tenant who improperly fails or refuses to deliver possession upon demand and resists the proceeding to dispossess him by his landlord. Such a liability does not attach to the tenant merely because he fails to pay rent when it is due, nor until demand by the landlord. The recovery in the case before us evidently includes double rent from the first day of April, 1909, thus giving double rent prior to the date of the demand. Whatever remedy the landlord may have for the rent due prior to the demand, it is not to be enforced by giving him double rent under the statute. *Willis* v. *Harrell,* 118 *Ga.* 906 (45 S. E. 794). The exact date on which demand for possession was made can not be fixed with certainty by this court. The agent for the plaintiffs testified, that, "prior to the issuing of the dispossessory warrant, on the 28th day of July, 1909, he made demand on Talley for possession of the premises." It is therefore directed that if the plaintiff shall, within twenty days from the filing of the remittitur in the office of the clerk of the superior court, write off from the recovery the sum of $400, to cover the double rent included in the verdict as accruing prior to the commencement of the proceeding, the judgment will stand affirmed; otherwise it is reversed.

*Judgment affirmed on condition.  All the Justices concur.*