## STANLEY *v.* STEMBRIDGE.

1. On the trial of an issue arising under a statutory proceeding to dispossess a tenant and a counter-affidavit denying that the defendant held under the plaintiff (Civil Code (1910), §§ 5385 et seq.), where the evidence showed that the plaintiff had purchased the land and taken a conveyance from the former owner, and that another as his agent had entered into a contract of rental with the tenant who had taken possession under the former owner, but the agent took a note for the rental in his own name and then assigned it to his principal "for value," such note and assignment were admissible in evidence.

2. Where an owner of land contracted with a tenant for a term of one year, and after the tenant took possession the owner conveyed the land to another, who, through an agent, made a new contract of rental with the tenant for the same term, on the trial of an issue arising under a statutory proceeding begun by the purchaser, after the end of the term, to dispossess the tenant, who refused to pay the rent or to surrender possession, and who in his counter-affidavit denied holding under the plaintiff, the deed from the original landlord to the plaintiff was admissible in evidence.

3. Under the facts indicated in the preceding headnotes, it would not prevent a recovery by the plaintiff for the defendant to testify merely that he had heard that his original landlord had sold the property, that he had thereupon given the note for rental to another, and that thereafter his original landlord had told him that she had not sold the place and would not do so, whereupon he paid the rent for that year to her and agreed with her to rent from her for another year, and remained in possession.

4. Under the statutory proceeding for the removal of a tenant failing or refusing to pay rent, or holding over beyond his term, there can not be a recovery of double rent except after a demand for possession.

(*a*) Such a proceeding is not a proper method of collecting single rent due by contract, prior to demand for possession.

5. If a tenant for a year continues in possession after the expiration of his term, without any right so to do, he is a tenant at sufferance.

(*a*) If after the expiration of the term a demand for possession is made by the landlord, and is refused, upon the trial of an issue arising in a proceeding under the statute for his summary dispossession, with a counter-affidavit denying that the defendant holds under the plaintiff, the double rent recoverable for the time elapsing after the end of the term is double the value of the property for rent, not double the contract price applicable to the term.

6. Where the rental to be paid by contract during the term was a specific amount of cotton, and the only evidence as to the value of the place for rent after the expiration of the term was that it was worth a stated number of pounds of cotton per annum, with no evidence as to the value in money of the cotton, a verdict finding a stated sum of money as rent for the year covered by the term, and another sum as rent for the time elapsing after the expiration of the term, was not supported by the evidence; nor were charges of the court authorizing such a finding authorized by the evidence.

OCTOBER 15, 1913.

Eviction. Before Judge James B. Park. Baldwin superior court. December 2, 1912.

On January 20, 1912, G. M. Stembridge made an affidavit, under the statute, alleging, that H. E. Stanley was in possession as tenant of a described tract of land, the property of the affiant; that the tenant failed to pay the rent; that he rented the premises for the year 1911, the term expiring on December 31; that the affiant had made demand for possession, and it had been refused; and that he made the affidavit in order that a warrant might be issued to remove Stanley from the premises. A warrant was issued. Stanley filed a counter-affidavit, alleging that he did not hold the premises, either by lease, rent, or otherwise, from the plaintiff. The case was returned to the superior court for trial. The evidence showed, in brief, as follows: Mrs. Stanley was in possession of the property, and rented it for the year 1911 to Stanley for a thousand pounds of lint-cotton. He went into possession about the first of January. In February Mrs. Stanley made a deed conveying the place to Stembridge, the plaintiff. J. E. Stembridge, his brother, acting as his agent, agreed to rent the property to Stanley for the year for four hundred pounds of lint-cotton, and took a note therefor payable to J. E. Stembridge or order. The payee entered on this a written assignment to G. M. Stembridge "for value," and delivered it to the latter. Stanley remained in possession. When the note became due, he refused to pay it or to deliver possession at the end of the year. The only defense made by him was that he testified that after he had been in possession under his contract of rental from Mrs. Stanley about a month he heard that J. E. Stembridge had bought the place. He said: "I then went to see Mr. Gene [J. E.] Stembridge and told him that I heard that he had bought the place upon which I was living, and that I would like to rent it from him. He then agreed to rent me the place for 400 lbs. of cotton, and I executed and delivered to him the rent note

introduced by the plaintiff. A few days after this trade with Mr. Gene Stembridge I saw Mrs. Stanley and told her about the transaction between Mr. Stembridge and myself. Mrs. Stanley then told me that she had not sold the place and did not intend to sell it. Mrs. Stanley demanded the rent from me in the fall of 1911, and I paid her the thousand pounds that I had agreed to. I went into possession of the place on or about January 1st, 1911, as tenant of Mrs. Stanley, and did not turn the possession back to her before I rented from Mr. Stembridge. I am now in possession of the land, as I rented the place again from Mrs. Stanley for the year 1912." The jury found for the plaintiff $72 as rent for 1911 and $139.92 as rent for 1912. The defendant moved for a new trial, which was refused, and he excepted.

*Sibley & Sibley,* for plaintiff in error. *Allen & Pottle,* contra.

LUMPKIN, J. (After stating the foregoing facts.) G. M. Stembridge instituted a proceeding under the Civil Code of 1910, §§ 5386 et seq., to have Stanley removed from possession of certain premises. He alleged two grounds therefor: (1) That the defendant had rented the place for the year 1911 and failed and refused to pay the rent. (2) That the defendant held over beyond his term and refused to deliver possession. Demand for possession was alleged. The defendant filed a counter-affidavit denying that he held by lease, rent, or otherwise, under the plaintiff. After a verdict in favor of the plaintiff and the refusal of a new trial, the case was brought to this court.

1. In renting the place, Stanley dealt with J. E. Stembridge, a brother of the plaintiff, and gave to J. E. Stembridge a note payable to his order. The evidence showed that the land had belonged to Mrs. Stanley, who conveyed it to G. M. Stembridge, and that his brother was acting as his agent in making the contract of rental with Stanley. After taking the note in his own name, the agent assigned it to his principal. Objection was made to the admission in evidence of the note, on the ground that it was not made to G. M. Stembridge as landlord, but that he appeared to be the assignee thereof, which did not authorize him to the defendant had failed to pay the rent. The rent note was adstatute. The plaintiff contended that he was the landlord and that proceed to dispossess Stanley by summary proceedings under the missible to show that the rent was unpaid, and that it was held by

the plaintiff and was not outstanding in the hands of another. If there were no other evidence on the subject, it might not show a right of dispossession by summary process, though it would carry the right to collect the rent. But, when accompanied by evidence that the plaintiff was the grantee of the title, and that the payee of the note was merely his agent, the note and assignment were admissible.

2. While the issue in such a proceeding is not one involving the validity of the landlord's title, where it appeared that the defendant had first rented the property from another and shortly afterward had made a contract of rental with the agent of the plaintiff, it was competent to show that in the meantime the original landlord had made a deed to the plaintiff, who thereupon assumed control, and through his agent made a new contract of rental with the defendant. The deed was properly admitted in evidence.

3. It was argued that as Stanley first went into possession as tenant of Mrs. Stanley, he was estopped from denying her title, or from attorning to another. This rule is generally correct as between landlord and tenant; but here Mrs. Stanley is not asserting any right or setting up any estoppel against Stanley. He seems to be trying to set up an alleged estoppel as between him and her in order to defeat the action of another from whom he later rented, and to whom he failed to pay rent. In *Hodges* v. *Waters,* 124 *Ga.* 229 (52 S. E. 161, 1 L. R. A. (N. S.) 181, 110 Am. St. R. 166, 4 Ann. Cas. 106), it was recognized that where a person was in possession as tenant of one, he might nevertheless estop himself by contracting also with another claimant as his landlord, at least so far as to compel him to pay rent during the agreed term; though he might set up after its expiration that he held under the original landlord, and that the person with whom he later contracted was not his landlord or entitled to the rent. See also, in this connection, *Bullard* v. *Hudson,* 125 *Ga.* 393 (54 S. E. 132). But it has also been held, on a proceeding begun after the end of the term of rental, to dispossess one as a tenant holding beyond his term, or for failure to pay rent, that the latter may show that, pending the term, the landlord conveyed the property to another, and thus destroyed his right to possession after the term had ended. *Raines* v. *Hindman,* 136 *Ga.* 450 (71 S. E. 738, 38 L. R. A. (N. S.) 863, 24 Ann. Cas. 347); *Beall* v. *Davenport,* 48 *Ga.* 165 (15 Am. R.

48

656). Stanley seems to have been somewhat anxious to set up an estoppel against himself in favor of Mrs. Stanley, without showing any actual right on her part, in order to defeat the payment of rent to Mrs. Stanley's grantee, who, so far as this record shows, succeeded to her rights as landlord. *Morrow* v. *Sawyer,* 82 *Ga.* 226 (8 S. E. 51). A warranty deed from Mrs. Stanley to Stembridge was in evidence. There was no denial of its execution. Stanley merely swore that, after his trade with J. E. Stembridge in regard to the rental of the place, Mrs. Stanley told him that she had not sold the place and did not intend to do so. This bit of hearsay was not enough to relieve him from his obligation to pay the rent due to the grantee in the deed, or surrender possession to him.

The decision in *Grizzard* v. *Roberts,* 110 *Ga.* 41 (35 S. E. 291), was cited as controlling the present case. There, however, on a proceeding to dispossess a tenant, he sought to set up against his landlord that there had been a conveyance of title before he rented the land, and that his landlord therefore had no title when the tenant made the contract of rental and entered into possession. There was a conflict in the evidence as to whether the landlord had ever parted with the title. The tenant was held to be estopped.

4, 5. If the jury found in favor of the landlord, what was the measure of the recovery as to double rent? The rental was payable in cotton. For the year 1911 the agreed rental was four hundred pounds of lint-cotton, classed "good middling." The plaintiff testified that for the year 1912 he rented the place to another for 1100 pounds of lint-cotton, but could not give possession because the defendant would not yield it, and that he thought the place was worth for rent 1,200 pounds of lint-cotton. The presiding judge charged, in effect, that if the plaintiff should recover, he could recover double the value of the agreed amount of cotton to be paid as rent for that year, and that for the part of the year 1912 which had elapsed before the trial the measure would be double the value of the place for rent for such fractional part of the year. It does not appear exactly when the demand for possession was made. It has been held that double rent only begins to run from the date of such demand, and that this form of procedure is not appropriate for the collection of single rent due under a contract. *Talley* v. *Mitchell,* 138 *Ga.* 392 (4), 397 (75 S. E. 465).

If the demand for possession was made after the term of rental

had expired, from the date of such demand double rent could be collected. What would be its measure? On this subject it must be frankly confessed that some confusion has arisen in the decisions of this court. As early an authority as Lord Coke declared: "There is a great diversity between a tenant at will and a tenant at sufferance; for tenant at will is alwaies by right, and tenant at sufferance entreth by a lawfull lease, and holdeth over by wrong. A tenant at sufferance is he that at the first came in by lawfull demise, and after his estate ended continueth in possession and wrongfully holdeth over." Co. Litt. 57b. Other common-law authorities have followed this definition. Thus Blackstone says that "an estate at sufferance is where one comes into possession of land by lawful title, but keeps it afterwards without any title at all. As, if a man takes a lease for a year, and, after a year is expired, continues to hold the premises without any fresh leave from the owner of the estate." 2 Bl. Com. *150. In 1 Taylor's Landlord and Tenant (9th ed.), § 64, it is said that "A tenancy at sufferance arises when a man comes into possession lawfully, but holds over wrongfully after the determination of his interest; differing in this respect from a tenancy at will, where the holding is by the landlord's permission." It is immaterial here to notice a distinction which has been made as to whether the occupant has come into the estate by act of the law or by act of another party. See also 1 Underhill on Landlord and Tenant, 226 (§ 162) et seq.; 1 Tiffany on Landlord and Tenant, § 15 et seq. The definition of Blackstone, quoted above, has been adopted by this court, and it has been held that after the termination of the term of a tenant, if he holds over, he becomes a tenant at sufferance, unless something is done to change that status to some other; as for instance to turn it into a tenancy at will, or for another period or term. *Godfrey* v. *Walker,* 42 *Ga.* 562, 574; *Smith* v. *Singleton,* 71 *Ga.* 68, 70; *Crawford* v. *Crawford,* 139 *Ga.* 394, 398 (77 S. E. 557), and citations; Civil Code, §§ 3697, 3700. In *Willis* v. *Harrell,* 118 *Ga.* 906 (45 S. E. 794), it was held, in a decision concurred in by the entire bench, that "A tenant by the month whose term ends with the calendar year is, after the expiration of his term, a tenant at sufferance, and continues as such until there has been some affirmative action by the landlord which has the effect of converting the tenancy into some other form." What action will change a tenancy at sufferance into a tenancy at will,

or whether under some circumstances non-action might suffice, is not now before us. The expression sometimes used, that a tenant at sufferance is in possession as a result of the laches or neglect of the landlord, can properly mean no more than that, at the end of the tenant's rightful holding, the landlord has an immediate right to possession. If he obtains possession at once, there is of course no holding over or tenancy at sufferance. If he does not do so at once, but allows some interval, though short, to elapse between the end of the term and taking steps to acquire possession, and the tenant continues to hold without right, this constitutes a tenancy at sufferance. We do not mean to say that the relation of landlord and tenant must have previously existed by contract in order that a tenancy at sufferance may arise; but we are now dealing with a case of that character.

Some statutes and some decisions have employed the expression "at (or by) sufferance" loosely, without an apparent appreciation of its legal significance, and sometimes as if it meant by permission. Where a statute has made use of the expression in an inexact sense, it is not surprising that the courts of the jurisdiction have at times fallen into a like careless or inapt method when dealing with such a statute. This class of statutes and decisions is illustrated by the law enacted in California and the decision in Moore *v.* Morrow, 28 Cal. 551. Moreover, an expression of Lord Coke to the effect that there could be no tenancy at sufferance against the King, but he that holdeth over in such a case is an intruder, as there is no laches to be imputed to the King, has apparently misled some judges.

If courts hold that to create a tenancy at will there must be some laches or negligence of the landlord in a sense different from that mentioned above, they must inevitably fall into confusion. What sort of laches or negligence is requisite, and for what time, before a tenancy at sufferance commences? And from the end of the tenant's term until this laches has ripened, what is the relation between the parties? It is not one of tenancy by contract, for the contract term has ended. It is not a tenancy at will, for that involves rightful possession, until the tenancy is terminated. It can not be dealt with as a trespass, at least until after re-entry. The tenant has not the right to retain possession after the end of his term. Upon such termination, if he remains in possession without

more, what is his status, if not that of a tenant at sufferance? The truth is that statutes and decisions which use the words "at sufferance" as if they involved some permission or recognition of a continued tenancy lose sight of the fundamental distinction between a tenancy at will and a tenancy at sufferance, namely, that in one the possession is rightful, in the other wrongful. Our own statute does not define a tenancy at sufferance, or require any notice to make it a wrongful possession. It recognizes the distinction between such a tenancy and one at will, and leaves the common-law definition of a tenancy at sufferance to stand.

In *Purtell* v. *Farris,* 137 *Ga.* 318 (73 S. E. 634), this court fell into the inadvertence of declaring that upon the termination of a tenant's term, if he failed or refused to deliver possession on demand, where there had been no laches by the landlord in making the demand, the tenant did not, by reason of his occupancy, become a tenant at sufferance. From what has been said above it will appear that this was contrary to the weight of authority and to previous decisions of this court, and must yield to them. In the opinion in the *Purtell* case it was said that in *Willis* v. *Harrell* (supra) there had been a delay of some years in instituting a proceeding to oust the tenant. In the *Willis* case, however, it was not held that this delay was necessary to create a tenancy at sufferance, but that such a relation arose after the expiration of the tenant's contractual term, and that the delay had not changed it, in the absence of anything further. It would be anomalous to hold that a landlord would be entitled to a summary remedy against a tenant wrongfully holding over, provided the landlord himself had been guilty of laches, but that he would be denied the remedy if he were diligent in seeking it.

In *Talley* v. *Mitchell,* supra, by the contract, as it appears in the record, the term of the tenancy was three years, expiring April 30, 1911. In 1909 the tenant refused to pay the agreed rent or to resign possession, claiming a reduction on account of a partial destruction of the premises by fire. The trial began on May 1, 1911, and ended the next day. It was held that the landlord was entitled, under the statute, to recover double the contract rate from the time of the demand for possession until the trial. It was not a case of holding after the expiration of the contractual term. Where the double rent recoverable is within the term, it is measured by

double the contract rental. If it is wholly after the expiration of the term and based on the existence of a tenancy at sufferance, double the rental value is recoverable.

6. The evidence as to the value of the place for rent was stated in pounds of lint-cotton. The court in his charge stated what was contended by the plaintiff as to its value in money. But there is not a word of evidence in the record on that subject. The jury found an amount in money. How they arrived at the amount, or on what the judge based his charge on that subject, is not apparent.

From what has been said it appears that a new trial must be granted. In some respects the charge of the court did not accord with the foregoing discussion. It would not be beneficial to take up separately each ground of the motion for a new trial. Except as indicated, the criticisms upon the charge and the objection to evidence were without merit.

*Judgment reversed. All the Justices concur.*