# CHARLESTON.

CAMDEN *v.* DEWING *et al.*

Submitted September 8, 1899—Decided Dec. 9, 1899.

1. COMPETITION—*Contract—Consideration.*
   Withholding competition, when not contrary to public policy, is a sufficient binding consideration for a contract. (p. 313).

2. EQUITY—*Specific Performance.*
   Two men, who are engaged in buying lands in the same sec-

tion of the country, to avoid competition, and secure the lands at a reduced price, agree that one shall buy for both, and that the lands so purchased shall be divided between them according to certain well-known surveys. One retires from the business, and the other goes on and buys the lands according to the agreement, but takes the deeds in his own name. He afterwards transfers them to a third party, who promises to discharge the agreement to divide, but afterwards refuses to do so. Equity will enforce specific performance. (p. 313).

3. DECREE—*Evidence—Preponderance.*

If the evidence is conflicting and contradictory to such an extent that reasonable men may differ as to the true preponderance thereof, this court will not reverse the finding of the circuit court. To secure such reversal, the evidence, when sifted, must plainly preponderate against the decree. (p. 315).

Appeal from Circuit Court, Berkeley County.

Action by Johnson N. Camden against William S. Dewing and others. Judgment for plaintiff. Defendants appeal.

*Affirmed.*

W. T. ICE and E. D. TALBOTT, for appellants.

MOLLOHAN & McCLINTIC, W. G. MATHEWS and FRANK WOODS, for appellees.

DENT, PRESIDENT:

In June, 1890, Johnson N. Camden filed a bill in chancery in the circuit court of Greenbrier County against William S. Dewing, James H. Dewing, and Charles A. Dewing, partners doing business in the firm name of Dewing & Sons, for the purpose of compelling them to execute to him a deed for about fifteen thousand acres of land situated in Greenbrier, Nicholas, and Webster counties. The case is as follows, to wit: In the year 1885 A. H. Winchester was acting as agent of Dewing & Sons in purchasing wild lands in this State. While so engaged he formed a partnership with Elihu Hutton for the purpose of purchasing lands on the waters of Gauley river. This firm carried on operations, beginning with the summer of 1885, continuously for several years. In its operations it learned that the plaintiff held options from many of the land owners; and that he, too, was buying the lands that they were after. They thereupon approached the plaintiff, and proposed to

do away with opposition, by letting one party do all the buying of the lands, and they would be able to secure them at a lower figure than otherwise. The plaintiff informed them that he was anxious to complete his purchases of what were known as the "Caperton Lands,"as he already held part of them, and agreed that, if they would purchase such lands for him, he would surrender all options outside thereof, and permit them to be the only buyers in the field. This they agreed to do. He carried out his part of the contract by surrendering his options and withdrawing as a purchaser. They went ahead in accordance with this understanding, and secured the title to about fifty thousand acres of land. Bernard J. Butcher was also taken into the partnership, but afterwards parted with his interest to his co-partners. The funds used in paying for this land were derived directly or indirectly through the purchases of other land from Dewing & Sons. After the purchases had all been effected, Winchester induced Dewing & Sons to purchase the same at the rate of two dollars per acre; they assuming his share and obligations and buying out Hutton. All the lands were then deeded to Dewing & Sons. The arrangement between Camden and Winchester was reduced to writing, in the shape of a letter directed to Bernard L. Butcher, and signed by said Winchester, on the 3d day of July, 1887. Winchester, Hutton, and Butcher, all of whom are made parties to this suit, fully admit the truth of this arrangement. Dewing & Sons deny they knew anything of it, and claim they were wholly taken by surprise when the plaintiff demanded a deed from them for these Caperton lands and they refused to be bound by the arrangement so made. Winchester, Butcher, and Hutton, in their depositions, claim that Dewing & Sons, through their representative, William S. Dewing, were fully informed of the arrangement, and acceded thereto, but insisted that, as he paid for the lands the title thereto should be vested in him, and he be permitted to settle with plaintiff and hold the title for him. The Dewings deny this in their testimony. This presents but two propositions for the consideration ot this Court: (1) Is this such a contract as a court of equity will enforce? (2) Is the proof sufficient to sustain the decree?

1. As to the first proposition, there can be no doubt.  If the title to the property still remained in Winchester and Hutton, equity would promptly enforce specific performance.  They do not deny it, but admit it.  It is true, no money has been paid as yet, by the plaintiff.  But this was not the consideration for the agreement.  The consideration was the withdrawal from competitive purchasing, by which they were enabled to purchase all the lands cheaper than they might have otherwise done.  This was in good faith fully carried out by the plaintiff.  Withholding competition, when not opposed to public policy, is a sufficiently binding consideration.  6 Am. & Eng. Enc. Law (2d ed.) 746.  It is a supreme duty of a court of equity and conscience to prevent fraud.  Browne, St. Frauds, p. 557, and *Id.* p. 571, § 448*a.*  "The fraud," says Judge Wells in *Glass* v. *Hulbert*, 102 Mass. 24, "most commonly treated as taking an agreement out of the statute of frauds, is that which consists in setting up the statute against its performance after the other party has been induced to make expenditures or a change of situation in regard to the subject-matter of the agreement, * * * so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss.  In such case the party is held by force of his acts * * * to be estopped from setting up the statute of frauds."  The plaintiff in this case, by force of his agreement with Winchester, changed his situation with regard to the subject-matter thereof so that the refusal to enforce such agreement is the infliction of an unjust and unconscionable injury and loss upon him, in addition to the denial of rights which it was intended to confer.  If the agreement had not been entered into, not only could plaintiff have purchased the Caperton lands, but he could also have purchased the Dewing lands, or forced Winchester to pay a much higher price therefor.  Winchester, Hutton, and Butcher received the full benefit of the agreement with plaintiff; and, if it had not been reduced to writing by Winchester, it could have been enforced against them, notwithstanding the statute of frauds.  They, however, neither deny it, nor in any manner resist it, for they

have parted with all interest therein to Dewing & Sons. Hutton, holding the legal title to these lands, was undoubtedly trustee for plaintiff; and his conveyance to Dewing & Sons was a breach of trust, unless they succeeded to the trusteeship, as the trustee would have the right to withhold the title until the purchase money was paid, of which the purchaser is the trustee. 11 Am. & Eng. Enc. Law. (2d Ed.) 181.

2. Is the proof sufficient to sustain the decree? Are Dewing & Sons innocent purchasers for value, or did they assume the trust undertaken by Winchester, or buy the lands with notice of the existence of such trust? Notice, to be sufficient, is such facts and circumstances as will put a person on inquiry. *Cain* v. *Cox*, 23 W. Va. 609. This is not a question of notice, but whether Dewing & Sons took the land subject to the trust that existed against them in the hands of their grantor. Winchester was the general agent for Dewing & Sons, and he, in conjunction with Hutton and Butcher, in accordance with their agreemnet with plaintiff, purchased the Gauley lands,—not, apparently, in the beginning, for Dewing & Sons; but, being authorized by Hutton to sell the land for not less than two dollars per acre, he made an arrangement with his principals by which they ostensibly became the purchasers at the agreed price, but actually they were to have all the benefits to accrue to him from such purchase, in the full enjoyment of the profits which otherwise would be his alone. This at least was an after ratification of all his acts and conduct in relation to such purchases. They could not possibly take the benefits of his purchases, and not assume the liabilities thereof. Though he might not have been their agent in the beginning, he became so when they accepted the profits of his labor, which agency must extend back, and include the inception of such labor; for they pay him only for his time and expenses, and keep his earnings. Accepting the benefit, they must assume the liabilities; otherwise, they take from him the power to meet such liabilities, without recompense, and leave those to whom he is under obligation to bear the loss. If Winchester intended such a result, he would be guilty of fraud; and if they retained the fruits of such fraud after notice thereof, they

would be pari delicto with him, and subject to the same legal responsibilities. Winchester says he is not guilty of fraud, for the reason that when he permitted all the lands to be deeded to Dewing & Sons he had a perfect understanding with them, through William S. Dewing, that they were to assume all his legal obligations to the plaintiff. Butcher and Hutton corroborate him. William S. Dewing, enjoying the full benefits of the agreement with plaintiff, except Hutton's share thereof, and with Winchester's profits in possession, denies there was such an understanding at the time, and before he took the title to the lands. Here the oral proof is conflicting, with the preponderance, in number of witnesses, at least, with plaintiff, and the circumstances strongly corroborative thereof. It is true that plaintiff has never paid any of the purchase money on the lands. Neither were the deeds ever executed and tendered to him, nor a proper demand made for such purchase money. The evidence is very conflicting. The witnesses swear positively, and contradict each other directly. Either on one side or the other, the witnesses are guilty of false swearing. Which side it is, it is not for this Court to determine. The circuit court has found for the plaintiff. Its finding cannot be disturbed unless it has decided against the plain preponderance of the evidence. This has been held so often by this Court that it seems almost useless to repeat it. The decree may be wrong, but we cannot say so. If we would disturb it, it would be only a matter of opinion, about which all reasonable men might differ. We cannot run the risk of doing a greater wrong, to prevent a wrong that we cannot say exists. If the Dewings have set up a false plea of being innocent purchaser, to defeat the contract between plaintiff and Winchester, that they may enjoy the fruits thereof without compensation, the statute of frauds furnishes them no protection whatever. Having obtained the title through assurances that they would convey it to plaintiff, to allow them to hold it would be to permit them to take advantage of fraudulent conduct, against which equity always furnishes relief. *Currence* v. *Ward*, 43 W. Va. 367, (27 S. E. 329); *Potts* v. *Fitch*, (decided at this term) (27 S. E. 329). The law being against them on the facts as determined by

the circuit court from the evidence, the decree must be affirmed.

*Affirmed.*