## HODGES *v.* WATERS.

One who goes into possession of land as the tenant of another can not set up title adverse to the landlord from whom he thus obtained possession, until there has been a surrender of the premises by the tenant to the landlord. However, if a tenant thus in possession expressly agrees to pay rent to another for a given time, he will be bound by these terms, if founded upon a sufficient consideration; but after the expiration of the time fixed in the express agreement, no promise to pay rent will be implied, and such person may deny liability for rent after that time, although he still remained in possession of the premises as the tenant of the person who placed him in possession.

Submitted October 7,—Decided November 13, 1905.

Distress warrant. Before Judge Rawlings. Bulloch superior court. June 20, 1905.

R. B. Waters sued out a distress warrant against C. W. Hodges, claiming the sum of $100 as rent for the described premises. A counter-affidavit was interposed; and the case, coming on for trial in the superior court on appeal, resulted in a verdict for the plaintiff

for the amount claimed. The defendant made a motion for a new trial, which, in addition to the general grounds, assigned error on two special grounds: (1) That the court erred in charging the jury as follows: "If you find that C. W. Hodges ever at any time recognized or acknowledged R. B. Waters as his landlord, he can not now attorn to any other person, if his possession was continuous from that time, that is to say, he can not be heard to deny his obligation to pay rent to said R. B. Waters." (2) The second special ground assigned error upon the failure to charge the defendant's theory of the case, that he was the tenant of Mrs. Sarah Waters, and not the tenant of R. B. Waters; and also the failure to charge the provisions of section 3116 of the Civil Code, which declares: "When the title is shown in the plaintiff and occupation by the defendant, an obligation to pay rent is generally implied; but if the entry was not under the plaintiff, or if possession is adverse to him, no such implication arises." The motion for a new trial was overruled, and the defendant excepted.

The evidence was in substance as follows: A warranty deed from Sarah Waters to the plaintiff, dated March 1, 1877, conveying the premises involved. A warranty deed between the same parties, conveying the same premises, dated February 4, 1896. The plaintiff testified that the defendant owed him the amount claimed in the distress warrant, for rent of the place therein described for the year 1903; that he did not have a separate contract for that year, but the place was worth the amount it brought in the years 1896 and 1897, and that the land was worth $100 per year. Defendant had been in possession as tenant for about twenty-three years, and had never paid any rent until about 1896. That year he paid $100 under a written agreement under seal, which was renewed in writing under seal for the year 1897. (These documents were introduced in evidence.) There has been no written contract since 1897, but defendant has paid rent along since, but only in one year as much as $100. Plaintiff agreed with his mother, Mrs. Sarah Waters, that she was to have a home on the place as long as he owned it. She remained in possession, and had the use of the place as a home under this agreement, until the place was sold, which was in the latter part of 1903. Plaintiff did not claim any rent for fourteen years, but paid the taxes. The defendant supported plaintiff's mother most of that time, but plaintiff contributed to her support.

The defendant testified that he did not owe Waters any rent, and did not agree to pay him anything; that he held the place under Mrs. Sarah Waters; that the agreement between Mrs. Waters and the plaintiff was that she was to have control and possession of the place as long as she lived, and defendant held under her. Defendant supported Mrs. Waters for the use of the place. This was the agreement between them. He had been in possession twenty-three years continuously under this arrangement. His wife was her youngest daughter. Waters never demanded rent until 1896. He attempted to sell the place about that time, and on account of Mrs. Waters objecting to the sale, she claiming that she had a right to occupy it during her life, the sale was not consummated; and plaintiff, being mad, demanded rent of defendant, threatening to eject him from the place unless he paid rent. He agreed to pay rent rather than have a lawsuit. He could not read or write, and signed the contract by his mark. He paid the rent for that year, and renewed the contract for the next year. Since that time he has not paid one cent. Has not agreed to pay anything. Denies any promise of making payment as testified to by defendant.

Mrs. Sarah Waters testified that the agreement between her and the plaintiff was that she was to have the possession and use of the place during her life; that there was a mortgage on the place, and the plaintiff agreed that if she would make him a deed he would pay the mortgage and allow her the possession and control as long as she lived. She was in possession under this agreement until the plaintiff sold the place and put her off. He never denied the agreement until recently. He now claims that the agreement was that she was to have the place as long as he owned it; but that is not correct. No rent has ever been demanded of her, and none has ever been paid. The reasons for demanding rent from Hodges are stated by her substantially the same as by him. The deed of 1896 was made because plaintiff said it was necessary on account of an old homestead which had been taken years ago. He repeated his agreement to allow her the use of the place as long as she lived when the deed of 1896 was made. She objected to the defendant's paying rent, and did not consider him under any obligation to pay it.

The defendant also introduced the answer of Waters in an equitable suit brought against him by Mrs. Waters, in which he stated that his mother was entitled to remain on the place as long as

plaintiff owned it and was in possession of it; that he had demanded no rent and had expected none from her.

Mrs. Anna Hodges testified that she knew of the agreement be↓ tween the plaintiff and his mother, and that the same was to the effect that she was to have a home on the place as long as she lived, and was to be supported from the place.

*Brannen & Booth,* for plaintiff in error.

COBB, P. J.   The rule that one who goes into possession of land as a tenant of another is estopped to deny the title of him who occupies the relation of landlord in the agreement is familiar law. In the application of this rule it is immaterial whether the landlord is the owner or has any legal interest in the premises.  It is sufficient as between him and his tenant that he claims ownership, and as a result of this claim the tenant is put in possession and allowed to occupy the premises.  *Grizzard* v. *Roberts,* 110 *Ga.* 41.   Upon the question as to whether this estoppel operates where the tenant, at the time the contract of rental is made, is already in possession through another and former landlord, or another claim of title, the authorities are at variance.   In Franklin v. Merida, 35 Cal. 558, 95 Am. Dec. 129, the Supreme Court of California held that if one in possession takes a lease from a stranger, the lessee so in possession is not estopped to deny the title of the lessor, since the latter parts with nothing, and the former has obtained nothing by the transaction.    This decision seems to follow an older decision, and in both cases one of the judges dissented.   The better rule seems to be that laid down by the Supreme Court of Colorado, in Lyon v. Washburn, 3 Colo. 201, where it is said that an attornment by one in possession estops the tenant from denying his landlord's title, unless the attornment was brought about by fraud, force, or mistake of fact. In the opinion Wells, J., says: "To avoid the assertion of a hostile title, one may lawfully contract to pay for his own; and if the threatened litigation be forborne, he is bound by his promise; and, so the tenant holding under a lord, where title is unimpeachable, may, if he will, undertake to pay rent to every stranger who demands it.   Such demand implies the threat of litigation and dispossession if the demand be refused; and if made in good faith, and without fraud or other improper practice to induce concession, and if the tenant yield to it with a full understanding of all the facts

which are material to the question of his liability, it is difficult to see why he should not be bound by his promise, even though he should become liable thereby to pay triple rent for the same premises." See also Cater v. Marshall, 72 Ill. 609; Lucas v. Brooks, 85 U. S. 436. In Hamilton v. Pittock, 158 Pa. St. 457, an instruction that "A man may, if he sees fit, where there are conflicting titles, take a lease from each of the owners of it; and if he is not deceived by assertions in regard to the matter, he would have to pay both," was approved as sound law.

Hodges, under his admissions, was a tenant of Mrs. Waters, the contract being that he was to have the use of the place, and the rent was to be paid by furnishing her with support. It is immaterial whether Mrs. Waters had any interest in the premises as between her and Hodges. He recognized her as his landlord, and he obtained possession from her; and as between them he can not raise any question as to her title. By express agreement under seal, in the year 1896 as well as the year 1897, he recognized the plaintiff as his landlord, and agreed to pay him a stipulated amount as rent, the written agreement between the parties having all the formalities required to create the technical relation of landlord and tenant. So far as those years were concerned he occupied the relation of tenant to both plaintiff and his mother, and as against each he was estopped to deny this relation, certainly so far as the payment of rent was concerned. He could not defeat the claim of Mrs. Waters for rent by showing that the agreement between her and her son was invalid for any reason; neither could he defeat the claim of her son for the rent of those years by showing that the title of the mother was superior. Having received possession of the land from Mrs. Waters, he could not by any act of his place himself in a position where as against her he could deny her title. So long as the possession thus acquired continued he was estopped from denying her title as landlord. To deny her title it was necessary for him to surrender to her that possession which he had received from her, and re-enter after such surrender under some other person. Therefore an agreement to pay rent from year to year would arise between Hodges and Mrs. Waters until there had been an actual surrender of the premises to her. Hodges' possession having been in no way dependent upon any act of the plaintiff, to what extent the agreement between him and the plaintiff would create a liability for rent of the

premises would depend upon the terms of the agreement. If Hodges, upon a sufficient consideration, agreed to pay the plaintiff rent for 1896 and 1897, he would be bound by this agreement and must pay the rent. But after the expiration of the term fixed in the agreement, his obligation to pay rent depending upon the agreement alone, and his possession not having been obtained through the person to whom the promise was made, there would be no obligation upon him to attempt a vain and idle thing, that is to surrender the premises belonging to one person to another who was not entitled to it. He was not compelled at the end of the year 1897 to abandon possession of the premises which he at all times held under Mrs. Waters, in order to prevent a liability on his part to pay to her son rent in the future. Not having acquired possession from her son, the estoppel raised by the contract to pay rent was no broader in its operation than the contract provided for; and he was therefore not estopped from denying after 1897 that he was no longer liable to pay rent as a tenant to the son of Mrs. Waters. If, at the time the defendant had made the contract to pay rent to the plaintiff, the plaintiff had been in possession claiming title to the property as his own, and no other person's rights were to be affected, then his entering into a contract to pay rent would have made the defendant a tenant of the person to whom the rent was payable, and render him liable to all the incidents of such a tenancy. See *Johnson* v. *Thrower,* 117 *Ga.* 1007; *Willis* v. *Harrell,* 118 *Ga.* 906(9). The defendant was liable to the plaintiff for the rent of the years 1896 and 1897, which he expressly agreed to pay; the consideration for such promise being the quieting of his possession from the threat of eviction made by the plaintiff. The defendant having testified that he had never agreed to pay rent for any other year than those named, the judgment must be reversed upon that assignment of error which complains that the court erred in charging the jury that if at any time the defendant had recognized the plaintiff as his landlord, he could never thereafter be heard to deny his obligation to pay rent so long as he remained in possession of the premises.        *Judgment reversed. All the Justices concur.*