### VANCE et al. v. CLARK et al.

(Circuit Court of Appeals, Fourth Circuit. July 2, 1918.)

No. 1592.

1. MINES AND MINERALS ⬥49—ADVERSE POSSESSION—SEVERANCE OF TITLE TO SURFACE AND MINERALS.

Where there has been severance of title to land and underlying minerals, the owner of the surface, in possession thereof, does not acquire title to the coal by taking from existing openings of the veins coal for his own domestic purposes, and occasionally permitting neighbors to take it, or himself digging it and selling it to them, for their domestic use.

2. APPEAL AND ERROR ⬥204(1)—OBJECTION AND EXCEPTION—ADMISSION OF EVIDENCE.

Admission of evidence cannot under the rules of the court be reviewed, there having been no objection and saving of that question by bill of exceptions.

In Error to District Court of the United States for the Southern District of West Virginia, at Huntington; Chas. A. Woods, Judge.

Action by Herbert L. Clark and others against Jasper Vance and another. Judgment for plaintiffs, and defendants bring error. Affirmed.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Maynard F. Stiles, of Charleston, W. Va., for plaintiffs in error.

W. C. W. Renshaw and W. R. Thompson, both of Huntington, W. Va. (Z. T. Vinson and John H. Meek, both of Huntington, W. Va., and Joseph S. Clark and Henry A. McCarthy, both of Philadelphia, Pa., on the brief), for defendants in error.

Before PRITCHARD and KNAPP, Circuit Judges, and ROSE, District Judge.

PRITCHARD, Circuit Judge. This is a writ of error to a judgment of the District Court of the United States for the Southern District of West Virginia, entered in favor of the defendants in error upon a verdict in their favor directed by the court. The defendants in error will hereinafter be referred to as the plaintiffs, and the plaintiffs in error will hereinafter be referred to as the defendants; such being the relative positions the parties occupied in the court below.

Herbert L. Clark and others, trustees for Guyandotte Land Association, brought action of ejectment against Jasper Vance, Carrie Davis, and others, to recover possession of a tract of about 200,000 acres of land lying in the counties of Mingo, Logan, Wayne, Lincoln, and Cabell, state of West Virginia. Defendants disclaim any right to the 200,000 acres, except the small pieces occupied by them, respectively, aggregating 198.21 acres. It appears from the evidence that Samuel Smith procured from the commonwealth of Virginia four grants—one for 120,000 acres, one for 33,000 acres, and two for 31,000 acres each. These four tracts of land joined. That title came by regular chain of conveyances to Lowe and Aspinwall, who, in the year 1874, instituted several actions of ejectment in the District Court of the United States for the District of West Virginia for the recovery of this land from various parties then occupying portions of it. One of these suits against Winchester Adkins embraced all of the land within these patents lying on the west side of Guyandotte river, and this action resulted in a judgment in favor of the plaintiffs for the recovery of the land sued for in that action, which contained about 200,000 acres.

The description of the land sued for in this action is identical with the verdict and judgment in that case, and the lines of the 33,000-acre grant, and some of the lines of the 120,000-acre grant. This will appear from an inspection of the declaration found in the printed record and the grant for the 120,000 acres and the 33,000 acres and the verdict map. The land in controversy lies wholly within the exterior lines of the grant of 33,000 acres. In this grant there was an exception of 29,651 acres of prior claims. It was discovered that one Carnahan had procured a grant for 30,000 acres prior to the grant to Smith of the 33,000 acres, and when this 30,000-acre grant was located it was found that its entire area practically was embraced within the lines of the 33,000-acre grant. Thereupon the predecessors in title of the plaintiff below, and at a time anterior to the institution of the ejectment suits by Lowe and Aspinwall, above referred to, acquired the title to the Carnahan grant. In 1850 one Adkins procured two grants from the commonwealth of Virginia, one for 300 acres and one for 86 acres, both of which were inside of the lines of the 33,000-acre

grant and also of the Carnahan 30,000-acre grant. Prior to the institution of the ejectment suits referred to, the predecessors in title of the plaintiff below and of Lowe and Aspinwall made a settlement of the conflicting claims of title between themselves and Adkins, by which they conveyed to Adkins the surface of the land for which he had procured grants, reserving and retaining to themselves all of the minerals underlying it. Richard Adkins' title to this surface passed by regular conveyances to the defendants, as was shown by the deeds introduced in evidence at the trial of this action, and some of which do not appear in the printed record.

The learned judge who tried this case in the court below charged the jury as follows:

"I charge you that the plaintiffs in this case have established by evidence so strong that no reasonable man can come to any other conclusion than that they have title derived from grants from the state of Virginia, which they have traced down from these grants to the present time, which gives them a good, legal title to the property. Of course we might enter into the field of conjecture, and say possibly these lands were not properly located by the surveyors; but we cannot decide cases on conjecture or possibilities. Evidence has been introduced here (and no evidence to the contrary has been introduced) tending to show that these lands are held by the plaintiffs under these grants. Therefore the only question that could arise after the plaintiffs have traced that title from the state to themselves is the question of adverse possession.

"I charge you that the surface may be severed from the coal and other minerals, and that one man may own the surface and another the minerals. The possession of the surface, however, is not adverse possession of the minerals, after the conveyance has taken place by a deed which conveys the coal to one man and leaves the surface to another; that is to say, the fact that these defendants occupied the surface even for 10 years, and used it as their own, as the evidence in this case shows, gave them no title to the coal under the land. The plaintiffs claim only the coal. In the case of Carrie Davis, there is no evidence at all, no pretense of evidence, that she ever exercised any adverse possession of the coal or used it in any way; therefore you will see that she has no claim whatever under adverse possession.

"The testimony of Jasper Vance, I confess, has given me a great deal of trouble. I am going to state to the jury briefly my reasons for saying that I do not think it is sufficient for you to base a verdict in his favor on the ground of adverse possession. Adverse possession, in order to give title, must be notorious, continuous, and hostile. Generally it is peaceable. The possession of the surface, together with the mere incidental use of the coal, that which any man in living on the surface might from time to time be tempted to make and might make as a mere incident to the use of the surface, would not give adverse possession to the coal.

"To make it clearer to you, reverse the situation: Suppose that there had been a mine on this land, which the plaintiffs were operating, and the defendant, although the owner of the surface, had been away from there, and that the plaintiffs in the operation of that mine had from time to time used some of the dirt on that land merely as an incident to its mining operations, had cut trees from time to time as an incident to the mining operations, to support the roof of the mine, that would not confer adverse possession. For possession of the minerals to be adverse, they must be used in an enterprise different and distinct from the use of the surface. Use of the minerals merely incidental to the possession of the surface is not sufficient. So, also, for the owner of coal to acquire possession of the surface by adverse possession, there must be adverse use of the surface distinct from the mineral enterprise, not merely a use incidental to the mining of the coal.

"I think I have made the matter clear to you, as I understand it, gentlemen, and of course it is my responsibility. If it turns out that I am wrong,

there is a court wiser than I am to correct my error. I direct you to find a verdict in favor of the plaintiffs in this cause."

Thus it will be seen that the court, before directing the verdict, found the facts upon which the judgment is based, the court having found as a fact that the plaintiffs had title from the state of Virginia, and, in addition thereto, chain of title to the lands in question up to the time of the institution of this suit. It necessarily follows that plaintiffs are vested with legal title to the same. We think the evidence amply warrants the conclusions of the court below as respects this point, therefore the only other question is as to adverse possession.

[1] There having been a severance of the minerals from the surface of these lands, it was incumbent upon the defendant, who sought to acquire title to the same by possession, to show such possession of the minerals as is required of one to gain title to the surface by occupancy of the lands for the statutory period. In the case of Wallace v. Elm Grove Coal Co., 58 W. Va. 449, 52 S. E. 485, 6 Ann. Cas. 140, the first and second syllabi are in the following language:

"1. A conveyance of the underlying coal, with the privilege of its removal from under the land of the grantor, effects a severance of the right to the surface from the right to the underlying coal and makes them distinct corporeal hereditaments. The presumption that the party having the possession of the surface has the possession of the subsoil also does not exist when these rights are severed.

"2. The owner of the surface, when the underlying coal had been so conveyed, can acquire no title to the coal by his exclusive and continued possession of the surface; nor does the owner of the coal lose his right or his possession by any length of nonusage. To lose his right he must be disseised, and there can be no disseisin by an act which does not actually take the coal out of his possession."

We quite agree with the court below that the evidence by which it was sought to establish adverse possession was wholly insufficient. The evidence offered by the defendants was to the effect that there were several openings of the coal veins underlying the land on which Vance lived, and that he only used these openings for domestic purposes. It further appears that Vance occasionally permitted his neighbors to take coal for domestic use, and occasionally he dug the coal, or some member of his family dug it, and sold it to some of his neighbors, and that this practice had continued from 10 to 12 years. In this connection it is significant that Vance was unable to furnish the names of more than two or three persons to whom he had sold coal during the period mentioned. Vance, among other things, on cross-examination, testified as follows:

"The coal bank is just above his house, and one is below. Has dug and used coal for domestic purposes; dug it along as he used it and wanted it. Q. Don't have any time in the year, just go there whenever you want it and dig some? A. I generally dig it in the fall, and I am in shape that I can. Q. You have no mine there equipped, however; it is just a hole where you have dug the coal out for your purposes, isn't is—domestic purposes? A. I have sold coal from there; yes. Q. Who did you sell it to, and when? A. I have sold coal pretty near all the time—at the start when I first opened the bank along. Q. When? A. I have sold coal to Emily Brock, and I have sold coal to Vinson Spurlock and Willie Brock, and one of the Adkinses —I forget his name. I know his name, too. Q. When did you do that? A. Just when I wanted to. Q. I know, but give me the date. A. The last 1

have sold has been about a year or two ago, I reckon. Q. When was the first you sold? A. Why, I have sold ever since I have been up there. When I first went up there I went to selling, and have sold on. Q. How much did you sell? A. I couldn't tell you that neither. Q. How much did you sell to any one person? A. I couldn't tell you that, neither, exactly. I have sold wagon loads, though, of it at a time. Q. How did you get the coal from the face back to the drift mouth? A. Well, sir; I dug the dirt off of it and throwed her back out of the way is how I got her, and took the coal out. Q. And lifted it out? A. Yes, sir. Q. What did you load it on when you got it outside? A. Put it on a wheelbarrow, and wheeled it out to the mouth, and then loaded it on a wagon. Q. How did you get it from the drift mouth down to the wagon? A. Wheeled it out on a wheelbarrow."

The foregoing is the evidence by which defendants seek to establish adverse possession of the coal underlying the surface, which, in our opinion, is not sufficient. This principle is announced in the case of Caldwell v. Copeland, 37 Pa. 427, 78 Am. Dec. 436.

[2] It is insisted by counsel for the defendants that the court erred in permitting the surveyor to give his opinion "as to the location of the lines of the several grants, and also the maps and plats and resurvey made by Johnson of the Carnahan grants," as such opinion was incompetent and irrelevant, and should have been excluded. An examination of the transcript shows that this evidence was admitted without objection. The defendants having failed to object to the introduction of the same, and to save the question by proper bill of exception, under the rules of this court we cannot consider that point.

The chief contention of the defendants seems to be that there is not sufficient evidence to warrant the verdict for the plaintiffs. A careful consideration of all of the evidence impels us to the conclusion that the findings of fact by the court below are amply justified by the evidence.

The judgment of the court below is therefore affirmed.

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes