## CHARLESTON.

BIDDLE CONCRETE CO. *v.* EDWARD P. McOLVIN *et al.*
SAME *v.* JACOBS REALTY CO. *et al.* (two cases).
(Three Cases—Nos. 4435, 4436, 4437).

Submitted April 11, 1922.    Decided April 18, 1922.

1.  VENDOR AND PURCHASER—*Vendor Retaining Title Until Final Payment Holds in Trust for Purchaser.*

    Where the owner of a vacant lot enters into a written agreement with another whereby the owner sells and the other buys such lot, the owner to execute a deed therefor upon full payment being made, the purchaser becomes the equitable owner and the vendor holds the legal title to the land in trust for the purchaser and as security for the payment of the purchase price.   (p. 763).

2.  SAME—*Vendor Holds Title in Trust for Purchaser, Where Latter Enters into Possession and Makes Valuable Improvements Under Oral Contract.*

    Such is also the case where there is a verbal contract of sale and purchase and the vendee enters into possession and makes such valuable improvements as will entitle him to specific performance.   (p. 763).

3.  MECHANICS' LIENS—*Purchaser is Deemed "Owner" Within Meaning of Mechanics Lien Statute.*

    In either of such cases, the vendee is deemed to be the owner of the land within the meaning of the Mechanics' Lien Law, chapter 6, Acts 1917, and one, who furnishes materials for the construction of a building on the land under a contract with the owner or his authorized agent, is entitled to a lien on such owner's interest in the land and building, for the

materials so furnished, upon compliance with the statutory requirements as to filing his claim of lien for record.   (p. 764).

4.   SAME—*Party Furnishing Materials Under Contract with Owner Need Not Give Owner Notice, But Must File Lien Within Statutory Period.*

Where one furnishes materials that are used in the construction of a building, under a contract with the owner or his authorized agent, to perfect his lien for material he is not required to give notice to the owner of his claim of lien, but he must record his notice of lien within the statutory period of 90 days from the date he ceases to furnish materials to the owner under the contract.   (p. 764).

Appeal from Circuit Court, Harrison County.

Action by the Biddle Concrete Company against Edward P. McOlvin and others, and two actions by the Biddle Concrete Company against the Jacobs Realty Company and others.   Judgments for plaintiff, and defendants appeal.

*Affirmed.*

*Carter & Sheets,* for appellants.
*Robert R. Wilson,* for appellee Biddle Concrete Co.
*Robinson & Robinson,* for appellee Bumgardner.
*Cornelius C. Davis,* for appellee Cole.
*Felix O. Sutton,* for appellee West End Plumbing Co.

MEREDITH, JUDGE:

These three cases involve the validity of certain mechanics' liens on three separate lots and the buildings thereon. They were heard together in the court below and also here.   As the same point of law is raised in each case, a single opinion will suffice for all.

## McOLVIN CASE.

In this case, Martin Petrel, in February, 1919, bought from C. T. Stealey, Lot No. 98 in the Hartland Addition to Clarksburg, the deed to be made upon payment of the purchase money.   About March 1st, Petrel took possession and began constructing a dwelling house thereon. He bought most of his materials from Glen Elk Lumber Company and

the plaintiff.    After the house was well under construction, he sold the property to McOlvin.    The exact terms of sale are not shown; a deed was made by Stealey to McOlvin, dated May 31st, which he recorded July 29th.    McOlvin paid Stealey the purchase money for the lot; his tenant took possession of the house about July 1st.    The house was then substantially completed, though some of plaintiff's material for which it claims a lien was furnished as late as July 24th.    Petrel paid no part of the purchase money on the lot and made no formal assignment of his contract to McOlvin, but verbally directed Stealey to make the deed to McOlvin.    McOlvin appeals from a decree allowing plaintiff's lien for materials furnished for the construction of the house on the theory that Petrel was a "contractor" for the construction of the house and not the "owner" of the lot on which the house stands.    As already stated, the terms of McOlvin's purchase are not clear, but that is his fault. He borrowed $2600 from a loan company, secured by deed of trust upon the property, and part of this, if not all, was used in paying claims for labor and materials.    He claims he then had no knowledge of plaintiff's demand.    Of course, that makes no difference.    He was bound to know.    Petrel swears that he was merely a contractor, though for his share he was paid by McOlvin some $350 or $400; that he did not own the lot, never paid anything on it.    He says he con-tracted to build the house for McOlvin; he may have con-tracted with McOlvin to finish the house for him, but he certainly did not make any contract with him until some time in May, and then the house was well on the way to comple-tion.    When he started the work, he did not know that McOlvin would buy it, nor is there any evidence that he expected to sell it to him.    He started building it for pur-poses of sale generally, and not to sell to any definite per-son.

Plaintiff's notice of lien was recorded October 15th, and within 90 days from the date of furnishing the last materials. Not knowing the exact relations between Stealey, Petrel and McOlvin, it filed its notice of lien against all of them.    If McOlvin were the purchaser of the lot from Stealey, in the

first instance, and Petrel merely a contractor to construct the house for McOlvin, then, under the mechanic's lien statute, the plaintiff should have served a notice of its claim of lien upon McOlvin, as owner of the property, within 60 days from the date of its furnishing the last item of materials, and in that event, its claim in this suit would be invalid, because no notice was served on McOlvin. But as already stated, McOlvin was not the original purchaser from Stealey. Stealey sold the lot to Petrel by written contract. Petrel was to pay the purchase money, but by his sale to McOlvin he got him to step into his shoes. McOlvin, under such circumstances, could not accept the benefits without assuming the burdens. By the contract of purchase with Stealey, Petrel became the equitable owner of the lot. Defendant complains that the written contract is not in the record. No matter whether the contract was written or verbal, Petrel took possession and made such valuable improvements that he would have been entitled to specific performance under the contract, even if it had not been in writing. Besides, there was no controversy about that. Stealey made the deed according to the contract, except at Petrel's request, he made it to McOlvin instead of to the original purchaser. Petrel was the equitable owner of the lot and his interest therein became liable for any mechanic's or material-men's liens, for which Petrel was responsible to the same extent as if he had the legal title to the lot, under a deed from Stealey, with a vendor's lien reserved in the deed securing Stealey's purchase money. The case cited by counsel for McOlvin, *Charleston Lumber & Manufacturing Company* v. *Brockmyer,* 18 W. Va. 586, instead of denying this rule, directly affirms it. If Stealey had conveyed the lot to McOlvin, reserving a lien to secure his purchase money, he would have had the first lien, but the mechanic's lien claims against Petrel for work and material, would nevertheless have been valid claims against the property, to be paid out of it, after the satisfaction of Stealey's vendor's lien. The holder of the equitable title to land is an owner of the land within the meaning of our mechanic's lien statute. *Charleston Lumber & Manufacturing Com-*

*pany* v. *Brockmyer,* 18 W. Va. 586.      See also: *Jacksonville Nat'l Bank* v. *Williams,* 38 Fla. 305, 20 So. Rep. 931; *Inter-State Bldg. etc. Ass'n* v. *Ayers,* 71 Ill. App. 529; *Monroe* v. *West,* 12 Ia. 119, 79 A. D. 524; *King* v. *Smith,* 42 Minn. 286, 44 N. W. 65; *Fullmer* v. *Poust,* 155 Pa. St. 275, 26 Atl. 543, 35 A. S. R. 881; 18 R. C. L. 885; 27 Cyc. 29; Boisot, Mechanic's Liens, Sec. 301; and, where one furnishes materials which are used in the construction of a building, under a contract with the owner or his authorized agent, he need not serve notice on the owner of his claim of lien; all he needs to do is to record his notice of lien within 90 days from the date of the last item furnished.      The owner does not need such notice as by contracting  for the materials, either directly himself or through an authorized agent, he already knows of claimant's right to his lien, and our statute does not require the service of any notice upon him.      But where the owner has entered into a contract with a third party, who has agreed to do the work or furnish the materials, or both, and this third party, the contractor, has purchased materials or employed labor, for the work, then the claimant furnishing the materials to, or performing the labor for, the contractor, must serve notice of his claim of lien upon the owner in order to hold the owner's property liable for his claim, and also record his notice of lien. Such notice must be served within 60 days and recorded within 90 days from the date of the last item of material furnished or of labor performed.

Petrel being the equitable owner of the lot, plaintiff was not required to serve upon him any notice of its claim of lien; nor did it need to do so as to McOlvin.      It owed him no duty.      He bought the property subject to the valid lien claims then filed or which might thereafter be filed for record against Petrel's equitable interest.      It necessarily follows that plaintiff's claim for materials furnished Petrel and which went into the construction of the dwelling placed on the lot, to which he had an equitable title is a valid lien, and the decree so holding will be affirmed.      We have not discussed the question whether plaintiff actually furnished the materials, as we think there can be no doubt about that.

### JACOBS REALTY COMPANY CASE—No. 1.

Some time in March, 1919, Fred Petrel contracted with Etta Pearl Spears for the purchase of Lot No. 185 in the Hartland Addition.    The terms of purchase do not appear. About that time he took possession and started building a house thereon.    A deed was made to him for the lot, dated June 17, 1919, recorded September 18th.    On August 23rd he conveyed the lot to J. R. Jackson,    by deed, recorded September 18th.    Jackson, on September 9th, conveyed to appellants, Jacob Realty Company 92-117ths, and Southern Pine Lumber Company the remaining 25-117ths of the lot, by deed, which was recorded September 22nd.

Before the deed was made to Petrel, the plaintiff sold and delivered certain material for the construction of the dwelling on this lot, and its deliveries, beginning May 5th, continued up to August 1st.    On October 15th, it recorded its notice of lien against M. Petrel, F. Petrel, J. R. Jackson, Jacobs Realty Company, and Southern Pine Lumber Company.    The present owners, the appellants, deny that Fred Petrel was the owner, but say he was the principal contractor in the construction of the dwelling house, though there is no evidence of that fact.    He bought the lot, started the building and then received a deed for it before the work was finished.    The only difference between this case and the McOlvin case is that the original purchaser in the McOlvin case did not ultimately take legal title to the lot; in this case he did; hence this case is governed by the same principles as the McOlvin case.    Plaintiff perfected its lien within the 90 days required and the decree enforcing its lien as well as the other liens is affirmed.

### JACOB REALTY COMPANY CASE No. 2.

It appears that Fred Petrel contracted with Florence Rider Dupay for the purchase of Lot No. 179, Hartland Addition, though the deed for the lot was made to his father, P. M. Petrel, dated June 17, 1919, recorded September 18th, August 20th, P. M. Petrel conveyed it to J. R. Jackson, a son-in-law, and he recorded his deed September 18th. Jackson on September 9th by deed conveyed 92-117ths of the lot

to Jacobs Realty Company, and 25-117ths to Southern Pine Lumber Company, which deed was recorded September 22nd. Fred Petrel paid nothing on the lot and swears he had no interest in it; that he was employed by his father to build the house on a commission of five per cent. It appears that Fred Petrel ordered most of the material, but some may have been ordered by his father, P. M. Petrel, and possibly some by his brother, Martin Petrel. We think it is clear that for whatever was ordered by the two sons for this dwelling, P. M. Petrel was responsible. Fred told the plaintiff about the time the last materials were ordered to charge the account to his father and the two sons, and this was done, the plaintiff understanding that they were partners. However, we think that P. M. Petrel, he being the owner of the lot, is bound by the acts of his son Fred on the score of agency. Where materials are furnished for the construction of a building under a contract with the owner or his authorized agent, the owner's property is subject to a lien for the materials. Upon what terms P. M. Petrel acquired Fred's equitable interest in the lot does not appear. Nor does it appear whether Fred had a written contract for the purchase of the lot. We simply have his bare statement that he contracted for it. He may have contracted for his father.

Plaintiff, on October 15th, filed its notice of lien against Florence Rider Dupay, P. M. Petrel, Fred Petrel, Martin Petrel, J. R. Jackson and the present owners, the appellants. It began furnishing materials May 15th and ceased August 2nd. Its notice is in the usual form and affects the interests, whatever they might be, of all who were named in it. The fact that some named in the notice did not have any interest in the property does not affect its validity, as to those who did. 27 Cyc. p. 165. The notice of lien was filed within the period required by the statute. That Fred Petrel was employed by his father to build the house on a percentage or cost plus basis did not make him an independent contractor. He was his father's agent, and his father was bound by what he did, so notice to the father of plaintiff's claim of lien was not required. Filing it for record within the required statutory period was sufficient.

The claims of plaintiff and the other lienors are fully proved; the liens were properly perfected and the decree adjudicating such claims to be liens on this property will also be affirmed.

We therefore, affirm the decrees in each case.

*Affirmed.*